FILED
FEB 2 2 2006
U S COURT OF
FEDERAL CLAIMS

IN THE UNITED COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT WILLIAMS and LAVERNE WILLIAMS<br><br>Plaintiffs<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant | ) | 06-124 C |

## COMPLAINT

ROBERT WILLIAMS and LAVERNE WILLIAMS ("PLAINTIFFS") complain of THE UNITED STATES OF AMERICA, by and through its agents, Mike Johanns, Secretary of Agriculture (USDA), Clyde Thompson ("THOMPSON"), Deputy Assistant Secretary for Civil Rights, and Fred Isler ("ISLER") former Assistant Director, USDA Office of Civil Rights ("OCR"), and would show upon the Court the following:

## I. JURISDICTION AND VENUE

1. Jurisdiction and venue lies in the Court of Federal claims pursuant to the Tucker Act, 28 U.S.C. § 1346(a) (2).

## II. PARTIES

2. Plaintiffs ROBERT WILLIAMS and LAVERNE WILLIAMS, husband and wife, are residents of Roscoe, Nolan County, Texas.

3. Defendant THE UNITED STATES OF AMERICA is the sovereign served with

process by the Clerk of this Court via delivery of the Complaint to the United States Attorney General.

## III. PROCEDURAL BACKGROUND

4. On November 3, 2003, Plaintiffs filed suit against Secretary Ann Veneman[1] raising constitutional claims, violations of the Equal Credit Opportunity Act and breach of contract alleging fraud, misrepresentation and interference with the attorney-client relationship. The Original Complaint in said action is attached hereto, marked Exhibit 1; same being incorporated as if fully set forth verbatim. In deference to rights of the Plaintiffs, the undersigned dropped his personal claim of interference of the attorney-client relationship in subsequent filings In an order filed November 3, 2003, the Honorable Judge Collen Collier-Kotelly, presiding, United States District Court for the District of Columbia, dismissed[2] the Plaintiffs' contract claim; and, in so doing, opined

---

[1] ***Williams v. Johanns,*** Civ. Action Number 03-2245 (CKK). The Honorable Mike Johanns is the successor-in-interest to former Secretary Ann Veneman.

[2] Judge Kotelly's opinion with regard to the Plaintiffs' contract claim is included here verbatim because of its significance relating to the illegal contract formation by ISLER and THOMPSON, to wit:

> ***Contract Law Claims***
>
> To the extent that Plaintiffs are making contract claims against Defendant regarding the 2002 settlement agreement, this Court lacks jurisdiction over such claims. The Tucker Act, 28 U.S.C. § 1346, gives the Court of Federal Claims exclusive jurisdiction over contract claims exceeding $10,000. *Stovall*, 2005 U.S. Dist. LEXIS 5188, at *14-15 (citing 28 U.S.C. § 1346(a) (2), *Mitchell*, 463 U.S. at 215); *see also Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003) ("[C]laims 'exceeding the $10,000 jurisdictional ceiling . . . are within the exclusive jurisdiction of the Court of Claims.'") (Quoting *Goble v. Marsh*, 684 F.2d 12, 15 (D.C. Cir. 1982)).
>
> In this circuit, a settlement agreement is considered a contract for the purposes of the Tucker Act. *Shaffer v. Veneman*, 325 F.3d 370, 372 (D.C. Cir. 2003). Therefore, Plaintiffs claim that Defendants' fraudulently induced them to enter into the 2002 settlement agreement is under the exclusive jurisdiction of the Court of Federal Claims. *Hansson v. Norton*, No. 04-5157, 2005, 11 U.S. App. LEXIS 10799, at *1 (D.C. Cir. June 10, 2005) ("This court generally treats settlement agreements as contracts subject to the exclusive jurisdiction of the Court of Federal Claims."); *see also Brown v. United States*, 389 F.3d 1296, 1297 (D.C. Cir. 2004) ("[B]ecause this contract question arises in a suit against the United States for more than $10,000 in damages, jurisdiction to decide whether the Department breached the settlement agreement lies exclusively in the Court of Federal Claims.").
>
> Plaintiffs' claims about allegedly fraudulent behavior by Messrs. Isler or Thompson during the

that (a) such claims should be brought in the Court of Federal Claims because the contract breach complained of exceeded $10,000 (b) the Federal Court of Claims has exclusive jurisdiction hereof; and, (c) ISLER and THOMPSON alleged unconstitutional, fraudulent. misrepresentation, duress and interference with the attorney-client relationship actions in formation and breach of the 2002 Resolution Agreement ("the Agreement") between the Plaintiffs and USDA should be brought in this court. The Agreement, the subject of this action. is attached hereto, marked Exhibit 2; same being incorporated as if fully set forth verbatim.

5. Pursuant to the District Court July 20, 2005 Scheduling Order, on August 15, 2005, Plaintiffs filed a Motion to Reinstate and Transfer Contract Claim to the United States Court of Claims and for Reconsideration of Dismissal of Constitution Claim.

6. On October 24, 2005, the District Court denied the Plaintiffs' Motion to Re-instate and Transfer Contract Claim to the United States Court of Claims and for Reconsideration of Dismissal of Constitution Claim, again, urging Plaintiffs to file the instant claim in the Federal Court of Claims.

7. Plaintiffs. upon instruction of the District Court, now file suit in the Federal Court of Claims seeking the Court administer justice and award damages.

## IV. <u>FACTUAL BACKGROUND</u>

### A. <u>PLAINTIFFS' HISTORY (NIGHTMARE) WITH USDA</u>

---

settlement negotiations could be appropriate in the Court of Federal Claims if the Plaintiffs were challenging the formation of the settlement under a contract claim. Because any potential contract claim would have to be brought before the Court of Federal Claims, Defendants' motion to dismiss Plaintiffs' claims relating to the size of the settlement agreement and Defendants' behavior during negotiations shall be granted.

***<u>Williams v. Johanns,</u>*** Civ. Action Number 03-2245 (CKK), D.C. District Court, Memorandum and Opinion, July 5, 2005

8. Plaintiffs ROBERT WILLIAMS and LAVERNE WILLIAMS operate a small farm in Roscoe, Texas.

9. In 1995, Plaintiffs were the very first black farmers[3] to file suit against the Secretary of Agriculture invoking the Civil Rights Act, Title VI, and Equal Credit Opportunity Act ("ECOA") because of insidious, intentional racial discrimination when Plaintiffs attempted to avail themselves to USDA'S federally assisted and farm loan programs.

10. Despite the settlement of their 1995 lawsuit, Plaintiffs continued to be victimized by USDA. On or about January 15, 2002, Plaintiffs applied for a Farm Service Agency[4] (FSA) farm and home loan to operate their 1000 acre farm. On or about February 8, 2002, Plaintiffs were informed by Don Craduck, the local FSA official in Fisher County, Texas, that their loan application was complete and all procedures for loan approval were complete.

11. Interested in and concerned about the status of their loan, on or about February 22, 2002, Plaintiffs contacted Sam Snyder, a FSA Loan Official in Washington, D.C. The following week, Snyder advised Plaintiff LaVerne Williams that there had been some holdups because of complaints from local white farmers. Plaintiffs were justifiably alarmed considering local white farmers had harassed Plaintiffs for the previous 13 years.

12. On information and belief, Craduck discussed Plaintiffs' farm and home loan

---

[3] The Williams case was the predecessor case to Pigford v. Veneman, _______ and Brewington v. Veneman, ___ _______the class actions law suits in the District of Columbia that yielded millions to approximately 14,000 black farmer class members. It was the Williams matter that ultimately resulted in the US Department of Justice, Office of General Counsel, issuing a legal memorandum, known as the "Dellinger Report" confirming that the ECOA applied to the United States government when functioning as a lender.

[4] The Farm Service Agency is an agency within the USDA legally responsible for the administration of the government's farm loan and subsidy programs.

application with other parties including local white farmers. As a result, the news of Plaintiffs' loan application was brought to the attention of Plaintiffs' creditors causing the creditor to immediately file liens against Plaintiffs' property in an effort to obstruct Plaintiffs' loan application. Plaintiffs were also advised by Craduck that the outcome of their application was delayed as he needed additional information.

13. On or about March 15, 2002, Plaintiffs discovered that Craduck had investigated the existence of liens on Plaintiffs' property on three different occasions. Upon information and belief, Craduck was delaying the application while, on information and belief, he unlawfully recruited opposition to the Williams' loan among local white farmers and other FSA officials.

14. On or about April 10, 2002, Plaintiffs contacted Carolyn Cooksie, FSA Deputy Administrator, to discuss the handling of their loan application. Ms. Cooksie advised Plaintiffs to pay off any liens on the property. Following Ms. Cooksie's advice, Plaintiffs paid off the liens. After Plaintiffs advised Craduck that their liens had been paid off, he told them they needed to show $3,000 in their bank account in order for the farm operation to show cash flow. Out of sheer frustration, Plaintiffs gave up. Every time they complied with FSA instructions, additional obstacles were placed in the way that prevented the processing of their loan application.

15. On or about May 9, 2002, Plaintiffs filed a discrimination complaint with OCR. OCR commenced an investigation. After completing that investigation, Jerome Williams, an OCR investigator, on information and belief, informed USDA that Plaintiffs had been discriminated against with regard to their 2002 application.

16. On or about July 6, 2002, Plaintiffs and at least 40 other black farmers traveled to

Washington, D.C. at the invitation of Secretary Ann Veneman to meet with her to discuss resolution of their discrimination complaints. While in D.C. in July 2002, Plaintiffs spoke directly with Secretary Ann Veneman, ISLER and THOMPSON regarding their case, and they were assured by ISLER and THOMPSON that their case would be settled.

17. Shortly after the meeting, ISLER and THOMPSON expressed an interest to Plaintiffs and their Counsel, the undersigned, in traveling to Texas to interview Plaintiffs and obtain more information regarding their 2002 discrimination complaint.

18. In good faith, Plaintiffs' attorney gave ISLER and THOMPSON permission to meet with Plaintiffs outside his presence for the express purpose of gathering more information regarding their complaint.

19. ISLER and THOMPSON, in fact, traveled, that very weekend, to Texas to meet with Plaintiffs in the presence of the daughters, Gwen Williams and Crystal Goodman.

20. The meeting was by no means an interview for additional evidence or material upon which to make a Final Agency Decision.[5] Instead, ISLER and THOMPSON took advantage of the opportunity to talk to Plaintiffs outside the presence of their attorney to pressure them into settlement of their claims.

21. During the meeting in Texas, ISLER and THOMPSON, using their superior bargaining power, unduly influenced Plaintiffs to terminate their Counsel, James W. Myart, Jr., the undersigned, claiming Plaintiffs' case would not settle at all if Myart continued to represent them. ISLER and THOMPSON then drafted a termination letter to Mr. Myart and prompted Plaintiffs to send the letter, which they did, to Myart. ISLER and THOMPSON told Plaintiffs by terminating Myart the USDA would definitely be

[5] Final Agency Decision is the formal device used to render, pursuant to 7 CFR 2.25, et seq., a positive or negative decision that discrimination occurred in violation of federal law.

able to settle their claims.

22. After securing the Plaintiffs' agreement to terminate their counsel during the meeting, ISLER and THOMPSON continued to pressure Plaintiffs into agreeing to a settlement in which they would receive $25,000 for the repair of a tractor and land debt relief of approximately $400,000. The verbal agreement did not provide for payment of compensatory damages as allowed by the ECOA. Several weeks of non-arms-length, intense telephone discussions occurred between Plaintiffs, their daughters and ISLER and THOMPSON.

23. ISLER and THOMPSON drafted the Agreement and sent it to the Plaintiffs. Being assured by ISLER and THOMPSON the Agreement reflected the same verbal agreement made in Texas, the Plaintiffs, without counsel or legal advice, signed the agreement.

24. Myart did not become aware of the verbal agreement or the executed Agreement until sometime after they, the agreements, verbal and express, had been made, executed and paid. The Agreement contained a clause for the payment of his attorney's fees; and, if not filed within thirty (30) days of the Agreements execution, he, Myart, would waive any right to payment of attorney's fees.

25. ISLER and THOMPSON unconscionably and insidiously (a) misrepresented the purpose of their visit to the Plaintiffs; (b) induced, employing duress, the Plaintiffs into terminating their counsel; (c) negotiated, employing duress with the intent to cause emotional distress, a non-arms length agreement with Plaintiffs knowing they had violated the attorney-client relationship; (d) misrepresented the $25,000 payment as funds for the repair of a tractor, yet expressly stated in the Agreement that the $25,000 was for compensatory damages; (e) did so with the intent to conceal and knowing that the

Agreement, ostensibly representing full payment for the Plaintiffs' damages, was valued far less than similar such agreements based on the same type claims, i.e., among others, the ***In Re: Will Sylvester Warren***[6], USDA Docket No. 1194, HUDALJ No.00-19-NA, which provided over six million ($6,000,000) in compensatory damages allowed pursuant to the ECOA. On information and belief, USDA, ISLER and THOMPSON knew of the existence of the Warren decision prior to its issuance on December 19, 2002; and, thereby, they all recognized the USDA'S exposure in the Plaintiffs' claims.

26. On information and belief, the prior knowledge of the USDA'S exposure in Plaintiffs' claims is what motivated the USDA, ISLER and THOMPSON to embark on the above-delineated illegal conduct.

27. After lodging formal complaints regarding the formation and circumstances underlying the Agreement and the manner in which it was obtained, then Secretary Ann Veneman, represented to Plaintiffs that a thorough investigation would be conducted. She also assured Plaintiffs that if their claims were affirmed, immediate relief would be provided.

28. In spite of clear evidence of official misconduct in procuring the Agreement and the Secretary's commitment to the contrary, USDA did not conduct the promised investigation, nor did it provide any form of relief. In fact, neither then Secretary Veneman, nor the USDA, has ever responded to Plaintiffs' formal complaints.

29. Plaintiffs, as afore mentioned, applied for loans subsequent to the Agreement. Those loans are the subject of the ECOA claims pending in the District Court, and they represent a material breach in the Agreement resulting in further injury to Plaintiffs,

[6] ***In Re: Will Sylvester Warren***, USDA Docket No. 1194, HUDALJ No.00-19-NA is attached, hereto, marked Exhibit 3; same being incorporated herein as if fully stated verbatim. (Analyses, in detail, of damages allowed pursuant to the ECOA.)

claim for which is made here.

30. Commencing in January 2003, Plaintiffs, again, attempted to secure loans and services from USDA. The Agreement provided, among other things, "The release of all debt will not be used by USDA or FSA in any negative manner in conjunction with Mr. and Mrs. Williams' application for or participation in, any USDA or FSA program, benefit or activity." Defendant is in total breach of this provision, among others. See Exhibit 1.

31. Plaintiffs are entitled to recover their reasonable attorneys' fees, including paralegals' fees, and expenses associated with the litigation of their claims. Plaintiffs are entitled to recover a sum from Defendants to compensate Plaintiffs a reasonable amount for their attorneys' fees, including paralegals' fees, in the preparation and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

## V.
## CAUSES OF ACTION

### FRAUD, MISREPRESENTATION AND COERCION IN FORMATION OF SETTLEMENT AGREEMENT/CONTRACT

32. Plaintiffs restate and re-allege paragraphs 1-31, above, as if fully stated herein and would further show the Court as follows:

32. USDA, by and through its agents, ISLER and THOMPSON, forced and coerced, through material misrepresentation and fraud, the 2002 Resolution Agreement upon Plaintiffs. Plaintiffs entered into the contrived Agreement without advice of Counsel. Plaintiffs were placed under duress and were subjected to material misrepresentations in the Agreement, fraud, non-arms length negotiation based on fabrication and with the intent to deceive Plaintiffs to Plaintiffs' detriment and injury as above alleged.

33. Specifically, USDA, by and through its agents, ISLER and THOMPSON, did the following illegal acts:

(a) made a false, material assertion(s) as to the purpose(s) of terminating the Plaintiffs' Counsel and the actual Agreement/contract;

(b) had knowledge of the falsity and/or a high degree of disregard for whether the assertion(s) was correct;

(c) intended the false assertion(s) to induce the Plaintiffs to settle the agreement without the benefit of Counsel knowing the Plaintiffs would rely on the falsity and material assertion(s);

(d) Plaintiffs' justifiably relied the false, material assertion(s) since the actors represented the United States government and had the authority to make a settlement; and,

(e) Plaintiffs were, indeed, damaged as a result of the false, material assertion(s).

34. At the time the material assertions were made, USDA, by and through its agents, was aware of ***In Re: Will Sylvester Warren*** and the potential damages due Plaintiffs pursuant to the legal analysis therein. USDA intentionally with held this information for the express purpose of denying Plaintiffs the value of their claim. Plaintiffs' seek the Agreement be voided and that USDA compensate Plaintiffs based on said damages in accordance with the legal analysis as in ***In Re: Will Sylvester Warren.***

## BREACH OF CONTRACT

35. Plaintiffs restate and re-allege paragraphs 1-31, above, as if fully stated herein and would further show the Court as follows:

36. 34. Even though Plaintiffs claim that the Agreement was fraudulent induced and should be voided as a matter of law, USDA, by and its agents, ISLER and THOMPSON, breached said Agreement with Plaintiffs in, but not limited to, the following ways, each of which proximately caused Plaintiffs' damages, as described above and as follows:

a. Their handling of Plaintiffs' loan applications subsequent to the 2002 Resolution Agreement:

b. Their denial of Plaintiffs' loan application submitted subsequent to the January 2002 Resolution Agreement; and

c. Their misrepresentation of the compensatory damages section of the 2002 Resolution Agreement.

37. Plaintiffs' pecuniary and non-pecuniary damages were consequential and foreseeable by USDA; and. Plaintiffs allege that such actions were in furtherance of the Defendants' discrimination against Plaintiffs.

38. Plaintiffs' loss of income was foreseeable by USDA and Plaintiffs allege that such acts were in furtherance of the Defendants' discrimination against Plaintiffs.

39. Plaintiffs seek recovery of all foreseeable and consequential damages as a result of the Defendant's intentional breach of contract.

40. Plaintiffs are entitled to recover his attorneys' fees from Defendants to compensate Plaintiffs for a reasonable fee for his attorneys' fees and costs in the preparation and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

## PRAYER

WHEREFORE, Plaintiffs ROBERT WILLIAMS and LAVERNE WILLIAMS request that Defendant UNITED STATES OF AMERICA be required to appear and answer herein, and that the Court:

Grant Plaintiffs ROBERT WILLIAMS and LAVERNE WILLIAMS'S judgment against the United States for:

(1) Fraud, coercion and misrepresentation in formation of the 2002 Agreement;

(2) Interference with the Plaintiffs' client/attorney contract;

(3) Breach of Contract damages and all forseeable and consequential damages flowing from (a) fraud, coercion and misrepresentation in formation of the 2002 Agreement and (b) interference with the Plaintiffs' client/attorney contract, up to and including $10,000,000; and (c) damages resulting from denial of post 2002 loan applications constituting breach of the 2002 Agreement.

(4) Damages resulting from the breach of agreed injunctive relief not provided pursuant to the 2002 Resolution Agreement;

(5) All injunctive and equitable relief provided under the Resolution Agreement;

(6) Reasonable attorney's fees, costs and expenses;

(7) Costs of suit: and

(8) such other and further relief as appears just and equitable.

Respectfully submitted,

James W. Myart, Jr. P.C.
1104 Denver Blvd, Suite 300
San Antonio, Texas 78210
Phone: (210) 533-9461
Fax: (210) 533-4815

By:______________________
James W. Myart, Jr.
Federal Bar No. TX 0021

ATTORNEYS FOR PLAINTIFFS

Post-it brand fax transmittal memo 7671 | # of pages ▸

| | |
|---|---|
| To James Myatt | From Robert Williams |
| Co. | Co. |
| Dept. | Phone # (915) 766-3711 |
| Fax # 202-638-6740 | Fax # (915) 766-3727 |



# UNITED STATES OF AMERICA
# DEPARTMENT OF AGRICULTURE

## SETTLEMENT AGREEMENT

This agreement is by and between the claimants, Robert and LaVerne Williams, and the United States Department of Agriculture (USDA). This agreement constitutes a full, complete, and final settlement of all claims in Mr. and Mrs. Williams' administrative complaints submitted to USDA and of any claims that Mr. and Mrs. Williams might have against USDA arising from the events and issues set forth in their complaints. This agreement is authorized by statute, USDA regulations, and the Equal Credit Opportunity Act.

The parties wish to set forth the terms of the agreement in writing. The agreement is entered into for the purpose of resolving Mr. and Mrs. Williams' claims for relief in a mutually acceptable, voluntary agreement. The parties agree that they are entering into this Settlement Agreement voluntarily, without coercion or duress, and that they fully understand the terms of the Agreement. This Settlement Agreement shall not constitute an admission of liability or misconduct on the part of the Agency or its past or present agents, employees, representatives or officers.

### USDA Agrees:

1. To discharge any and all of Mr. and Mrs. Williams' debt owed to the Farm Service Agency. The agreed upon debt relief will be implemented no later than 30 calendar days after this agreement has been signed by all parties. The release of all debt to USDA will not be used by USDA or FSA in any negative manner in conjunction with Mr. and Mrs. Williams' application for, or participation in, any USDA or FSA program, benefit or activity. This release will not trigger the statutory provisions found at Section 648 of the Federal Agriculture Improvement and Reform Act of 1996 that preclude an individual who has received debt forgiveness from obtaining future loan from USDA or from obtaining future debt forgiveness.

2. To pay Mr. and Mrs. Williams the sum of $25,000 in compensatory damages as compensation for non-pecuniary damages suffered, such as pain and suffering. USDA also agrees to pay the Williamses $6,250 as additional compensation for any tax consequences they may incur as a result of the recovery under this Agreement. The payments referenced in this paragraph shall be made to Robert and LaVerne Williams as soon as possible but no later than 30 calendar days after this agreement has been signed by all parties.

3. To pay reasonable, documented attorney's fees and costs within 30 days of receipt of a bill of particulars itemizing the legal services rendered and expenses incurred. Such bill of particulars must be submitted to USDA within 30 calendar days after this agreement has been signed by all parties. The failure to submit a timely bill of particulars constitutes a waiver of any right to recover attorney's fees.

**Mr. and Mrs. Williams Agree:**

4. That this settlement agreement constitutes a withdrawal of all of Mr. & Mrs. Williams' administrative discrimination complaints submitted to USDA, and that Mr. and Mrs. Williams will not file any new administrative complaints arising from the events and issues set forth in these complaints.

5. To accept the above relief as a full, final and complete settlement of all claims raised in the Robert and LaVerne Williams' administrative discrimination complaints submitted to USDA, and any and all claims that Robert and LaVerne Williams have against USDA based on facts occurring prior to the date of this agreement of which Mr. and Mrs. Williams knew or reasonably should know.

6. To waive and release any and all claims expressly raised in Mr. and Mrs. Williams' administrative discrimination complaints submitted to USDA, and any and all claims that Mr. and Mrs. Williams have based on facts occurring prior to the date of this agreement of which Mr. and Mrs. Williams knew or reasonably should know, against USDA or any officer, employee, or agent of USDA, in either his or her official or individual capacity, including any claim for attorney's fees and costs.

**Both Parties Agree:**

7. That the explicit terms of this agreement are confidential. The fact that the matter was voluntarily resolved in a manner acceptable to both sides may be communicated by either party to any person. However, except as otherwise required by law, the explicit terms of this agreement will not be disclosed by either party, without the express permission and written consent of the other party, to any person not a party except as necessary for that party to perform official government duties, to implement the agreement, or to defend themselves against any claim or cause of action.

8. That this agreement is governed by the laws of the United States and any action to enforce this agreement will be governed by the laws of the United States.

9. That this agreement constitutes the exclusive terms and conditions of the settlement of this matter. Except for the explicit terms set forth in this agreement, no other relief is intended or implied.

10. That this matter is resolved through this settlement agreement. If the terms of this agreement are not carried out (other than as a result of actions by Mr. and Mrs. Williams), Robert and La Verne Williams may request specific enforcement of the terms of the agreement by writing to the Director, Office of Civil Rights, USDA, Room 326-W, Washington, D.C. 20250. This request should be filed as soon as practicable but no later than 60 calendar days from the date Mr. and Mrs. Williams knew or reasonably should have known, of the alleged failure to implement the agreement. After a written request to the Director, Office of Civil Rights, asking that the terms of the settlement agreement be specifically enforced, USDA will specifically enforce such terms within 60 calendar days if non-compliance with the agreement is found. If specific enforcement does not occur within the 60 days, the claimant may take other action allowable under law.

Hunt Shipman
Deputy Undersecretary for Farm
And Foreign Agricultural Services

Date: 8/2/02

Robert Williams
Complainant

Date: ____________

La Verne Williams
Complainant

Date: ____________