IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT WILLIAMS and LAVERNE WILLIAMS, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 06-124C (Judge Williams) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully requests that the Court dismiss the complaint for lack of subject matter jurisdiction. In support of our motion, we rely upon the complaint and the following brief.

## QUESTIONS PRESENTED

1. Whether plaintiffs' claim for breach of the 2002 settlement agreement fails to present a claim for actual money damages that are presently due.

2. Alternatively, whether plaintiffs' claim for breach of the 2002 settlement agreement should be dismissed because it is not ripe for judicial review.

3. Whether plaintiffs' claim for fraud, misrepresentation, and coercion in formation of the settlement agreement should be dismissed.

## STATEMENT OF FACTS

Plaintiffs Robert and Laverne Williams are African-American farmers who operate a small farm in Roscoe, Texas. Comp. ¶¶ 8-9. In January 2002, plaintiffs applied to the United States Department of Agriculture ("USDA"), Farm Service Agency ("FSA"), for a loan to

operate their farm. Complaint ("Comp.") ¶ 15. In May 2002, plaintiffs filed a discrimination complaint with the USDA's Office of Civil Rights ("OCR") alleging discrimination by the USDA in the processing of their loan. Id. ¶ 20. In July 2002, Frederick Islet and Clyde Thompson, agents of USDA, traveled to Texas to interview the plaintiffs and obtain more information about their discrimination complaint. Id. ¶¶ 17, 19. Plaintiffs' attorney was aware of and consented to the meeting, but he did not attend the meeting with Messrs. Islet and Thompson. Id. ¶ 18.

During the meeting, plaintiffs agreed to the terms of the agreement that they ultimately signed on August 13, 2002, to settle their discrimination claim. Id. ¶ 23. The agreement discharged plaintiffs of all debt then owed to FSA and provided the plaintiffs with $25,000 in compensatory damages and additional compensation for attorneys fees. Id. Ex. 1., ¶¶ 1-3. With respect to the discharge of plaintiffs' debt, the agreement provided:

> The release of all debt to USDA will not be used by USDA or FSA in any negative manner in conjunction with Mr. and Mrs. Williams' application for, or participation in, any USDA or FSA program, benefit or activity. This release will not trigger the statutory provisions found at Section 648 of the Federal Agricultural Improvement and Reform Act of 1996 that preclude an individual who has received debt forgiveness from obtaining future loan[s] from USDA or from obtaining future debt forgiveness.

Id. Ex. 1, ¶ 1.

In exchange, plaintiffs agreed to withdraw their discrimination complaint and not to file "any new administrative complaints arising from the events and issues set forth in these complaints." Id. ¶ 4. Plaintiffs also agreed to accept the settlement agreement as "full, final and complete settlement" of all claims that they might have against the USDA "based on facts

occurring prior to the date of [the] agreement." Id. ¶ 5.

In 2003, plaintiffs applied to the FSA for another farm operation loan. Compl. ¶ 30. This application was denied. Id. ¶ 34b.

On November 3, 2003, plaintiffs filed suit in the United States District Court for the District of Columbia. Williams v. Johanns, No. 03-2245. The complaint alleged, among other things, that the 2002 settlement agreement and the denial of the 2003 loan application were violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, and the Fifth Amendment. The court dismissed several of those claims for failure to state a claim upon which relief could be granted. Williams v. Johanns, No. 03-2245 (D.D.C. July 5, 2005). The court further dismissed all claims for injunctive relief, including plaintiffs' request that the USDA be enjoined from denying their 2003 loan application. Id. Finally, the court held that any claims challenging the formation of the settlement agreement or the size of the settlement agreement were subject only to this Court's jurisdiction pursuant to the Tucker Act, and it, therefore, dismissed those claims. Id. Plaintiffs' claim that the denial of the 2003 loan application was a violation of ECOA remains pending in the district court. Id. The district court subsequently considered and denied plaintiffs' motion for reconsideration. Williams v. Johanns, No. 03-2245 (D.D.C. October 24, 2005). On February 22, 2006, plaintiffs filed their complaint in this Court.

## ARGUMENT

I. Legal Standards Pursuant To RCFC 12(b)(1) And 12(b)(6)

Subject matter jurisdiction may be challenged at any time by the parties, by the Court sua sponte, or on appeal. Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993); United States v. Newport News Shipbuilding & Dry Dock Co., 933 F.2d 996, 998 n.1 (Fed. Cir. 1991). The

burden of establishing the Court's subject matter jurisdiction rests with the party seeking to invoke it. Wilson v. United States, 58 Fed. Cl. 760, 762 (2003), aff'd, 405 F.3d 1002 (Fed. Cir. 2005). However, the Court must accept as true the facts alleged in the complaint and must construe such facts in the light most favorable to the pleader. Id. Moreover, the Court may consider all relevant evidence, including evidence outside the pleadings when resolving a jurisdictional challenge. Id.

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. The Tucker Act, however, does not create any substantive right of recovery against the United States for money damages. Testan, 424 U.S. at 398; Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-07, 372 F.2d 1002, 1007-09 (1967). Rather, the statute merely confers jurisdiction upon the Court whenever the substantive right exists. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc). Thus, a claimant must look beyond this jurisdictional statute for a waiver of sovereign immunity. Mitchell, 445 U.S. at 538; Connolly, 716 F.2d at 885. Further, the sovereign's consent to be sued cannot be implied but must be unequivocally expressed. United States v. Testan, 424 U.S. 392 (1976).

A motion to dismiss pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when the plaintiff's alleged facts do not entitle him to a remedy. Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998). Dismissal pursuant to RCFC 12(b)(6) is proper when it is apparent that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Ponder v. United States, 117 F.3d 549, 552 (Fed. Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## II. Plaintiffs' Claim That The Government Breached The 2002 Settlement Agreement Must Be Dismissed For Lack Of Subject Matter Jurisdiction Because It Fails To Present A Claim For Actual Money Damages That Are Presently Due

In order to invoke the Court's jurisdiction, plaintiffs must present a claim for "actual, presently-due money damages from the United States." United States v. King, 395 U.S. 1, 3 (1969); New York Life Ins. Co. v. United States, 118 F. 3d 1553, 1556 (Fed. Cir. 1997) ("The claim must, of course, be for money"). However, it is not enough for plaintiffs to simply present a claim for money damages. Griswold v. United States, 61 Fed. Cl. 458, 465 (2004). Rather, plaintiffs must establish that a substantive right for money damages exists and is enforceable against the United States. Id. (citing United States v. Testan, 424 U.S. 392, 398 (1976)). Moreover, the alleged substantive right must be fairly interpreted as mandating compensation by the Government for the damage sustained. Id.

In this case, plaintiffs allege that the USDA breached the 2002 settlement agreement by denying their 2003 loan application. Comp. ¶¶ 30, 36. However, the 2002 settlement agreement provides that the remedy for the agency's non-compliance is specific performance via a request to the Office of Civil Rights, a remedy this Court cannot provide. See Comp. Ex. 1, ¶ 10. Thus, the substantive right plaintiffs identify does not entitle them to money damages. See Griswold, 61 Fed. Cl. at 465-66 (finding that plaintiffs' identified substantive right to notice cannot be fairly interpreted to require the Government to pay money for the damages sustained).

Moreover, to the extent that plaintiffs are alleging that the USDA breached the settlement agreement because it discriminated against the plaintiffs, the 2002 settlement agreement follows USDA regulations which provide that claims of discrimination may be filed with the Assistant Secretary for Civil Rights, with judicial review available for any action taken. See 7 C.F.R. §§

15.6, 15.11, 15d.4. Indeed, plaintiffs' claim that denial of the 2003 loan violated ECOA is still pending in the district court. See Williams v. Johanns, No. 03-2245, p.1, n.1 (D.D.C. July 5, 2005). Accordingly, plaintiffs have failed to present a claim for actual, presently-due money damages, and their claim that the 2002 settlement agreement was breached should be dismissed for lack of jurisdiction. See Schnelle v.United States, 69 Fed. Cl. 463 (2006).

III. Alternatively, Plaintiffs Claim Should Be Dismissed Because It Is Not Ripe

Rather than contending that denial of the 2003 loan application was the result of unlawful discrimination, plaintiffs may be alleging that the mere denial of their 2003 loan application was a violation of the 2002 settlement agreement. However, because plaintiffs have not exhausted their administrative appeals, there is no final agency action as to their loan application. Accordingly, plaintiffs' claim is not ripe for review.

The ripeness doctrine is derived from Article III limitations upon judicial power and from prudential reasons for refusing to exercise jurisdiction. Reno v. Catholic Social Services, Inc., 509 U.S. 43, 57 n.18 (1993). The rationale of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967). The Supreme Court has identified a twofold inquiry to determine the ripeness of a particular controversy: first, whether the issues tendered are appropriate for judicial resolution, and second, whether there would be substantial hardship to the plaintiff if immediate judicial relief is denied. Toilet Goods Ass'n., Inc. v. Gardner, 387 U.S. 158, 162 (1967).

Because plaintiffs' claim is essentially a challenge of an administrative action, the first inquiry is satisfied only if there is "final agency action." See id.; Abbott Laboratories, 387 U.S. at 149 (declaring that there had been "final agency action" and that "no claim is made here that further administrative proceedings are contemplated"). Plaintiffs' claim fails to meet this test.

An adverse decision by the FSA denying a loan application is subject to a comprehensive administrative review process. A party aggrieved by such a decision may file an appeal with, or seek reconsideration by, the local FSA Farm Loan Manager. See 7 C.F.R. §§ 780.6, 780.7. In addition, parties may appeal adverse decisions to the National Appeals Division, a USDA appeals board that offers participants the right to a hearing in his state of residence as well as a right to an immediate appeal of an adverse determination by the hearing officer. See 7 U.S.C. § 6992(a); 7 C.F.R. § 780.6; 7 C.F.R. Part 11.

Pursuant to 7 U.S.C. 6912(e), Congress expressly required exhaustion of these non-judicial means prior to instituting any suit in Federal court against the Government. This Court, on several occasions, has refused to entertain claims by plaintiffs who have failed to exhaust the NAD appeals process. See Ace Property & Cas. Ins. Co. v. United States, 60 Fed. Cl. 175, 184 (2004); Farmers & Merchants Bank v. United States, 43 Fed. Cl. 38 (1999). In Farmers & Merchants Bank, the Court held that, even for claims of breach of contract over which this Court otherwise would possess jurisdiction, "the plain language of [7 U.S.C. 6912(e)] demonstrates a clear legislative intent to require all parties dissatisfied with FSA decisions to exhaust the NAD appeals process, before filing suit in any court." Farmers & Merchants Bank, 43 Fed. Cl. at 40 (1999). See also McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required").

Because plaintiffs have not pursued their administrative remedies, the agency's action is not "final," and plaintiffs' claim is not ripe for the Court's review.

## IV. Plaintiffs' Claim For Fraud, Misrepresentation, And Coercion In Formation Of The Settlement Agreement Must Be Dismissed

The first count of plaintiffs' complaint alleges that Messrs. Isler and Thompson "forced and coerced, through material misrepresentation and fraud, the 2002 [Settlement] Agreement upon Plaintiffs." Comp. ¶ 32. The alleged misrepresentation is that Messrs. Isler and Thompson represented that they were traveling to Texas "to interview Plaintiffs and obtain more information regarding their 2002 discrimination complaint," when, in reality, Messrs. Isler and Thompson "took advantage of the opportunity to talk to Plaintiffs outside the presence of their attorney to pressure them into settlement of their claims." Comp. ¶¶ 17-20, 25. Plaintiffs' allege that this conduct was fraudulent even though, prior to the meeting in Texas, Messrs. Isler and Thompson gave assurance to plaintiffs that their "case would be settled." Compl. ¶ 17. Plaintiffs further allege that Messrs. Isler and Thompson "induced" them into terminating their attorney-client relationship. Comp. ¶ 25. According to plaintiffs, Messrs. Isler and Thompson drafted a letter terminating plaintiffs' relationship with their attorney, which the plaintiffs sent to their attorney. Compl. ¶ 21.

In addition, plaintiffs allege that they were told that they would be paid $25,000 for the repair of a tractor, however, the settlement agreement provided that USDA would pay plaintiffs $25,000 "in compensatory damages as compensation for non-pecuniary damages suffered, such as pain and suffering." Compl. ¶¶ 22, 25, Ex. 1 ¶ 2. Finally, plaintiffs contend that the settlement agreement was fraudulently obtained because Messrs. Isler and Thompson knew that a settlement agreement in another case had provided over $6 million in compensatory

damages."[1]

Plaintiff's claim for fraud, misrepresentation, and coercion in formation of the settlement agreement is a tort claim over which the Court does not possess jurisdiction. See Aetna Cas. and Sur. Co. v. United States, 228 Ct. Cl. 146, 655 F.2d 1047, 1059 (1981) ("claims based on negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed, are claims sounding in tort"); Somali Development Bank v. United States, 205 Ct. Cl. 741, 508 F.2d 817, 821 (1974) (same). The Court has recognized an exception to the general rule where the plaintiff's tort claim is "entirely dependent on, and in fact evolves from the contract." Dureiko v. United States, 42 Fed. Cl. 568, 582 (1998). The "relevant inquiry is whether there is a nexus between the alleged tortious conduct and some alleged contractual obligation." D.F.K. Enters., Inc. v. United States, 45 Fed. Cl. 280, 284 (1999).

There is no such nexus in this case. The USDA did not have a contractual obligation to disclose to plaintiffs that they were going to Texas to discuss a potential settlement of their discrimination claim. Nor was there a contractual obligation to disclose the terms of other settlement agreements. Accordingly, plaintiffs' claims are not within the scope of the Court's Tucker Act jurisdiction. See D.V. Gonzalez Electric & General Contractors, Inc. v. United States, 55 Fed. Cl. 447, (2003) (claim that estimated cost was negligently misrepresented not within Court's jurisdiction because Government had no contractual duty to disclose the

---

[1] In the district court proceeding, plaintiffs alleged that their settlement agreement with USDA "pales in comparison" to relief offered other black farmers. In that case, the plaintiffs cited, among others, the settlement agreement in Pigford v Veneman, 206 F.3d 121 (D.D.C. 2000). As the district court noted, in Pigford, each farmer was granted approximately $100,000 of combined debt relief and monetary payments, whereas, the combined debt relief and monetary payments to plaintiffs totaled over $400,000. Williams v. Johanns, No. 03-2245, p.9 (D.D.C. October 24, 2005).

estimate).

With respect to plaintiffs' claim of coercion, the plaintiffs are required to show, among other things, "wrongful conduct" by the defendant. See Preferred National Insurance Co. v. United States, 54 Fed. Cl. 600 (2002). Plaintiffs allege that Messrs. Isler and Thompson "prompted" plaintiffs to terminate their attorney-client relationship in order to facilitate a settlement of their discrimination claim. Compl. ¶¶ 21, 25. Messrs. Isler and Thompson were employed in the USDA Office of the Assistant Secretary for Civil Rights. They are not attorneys. Their communications with the plaintiffs violated no laws or regulations. Moreover, the plaintiffs' allegations are directly refuted by the 2002 settlement agreement, signed by the plaintiffs, which states that the parties "are entering into this Settlement Agreement voluntarily, without coercion or duress. . . ." Comp. Ex. 1, p.1. Inasmuch as the complaint does not set forth any allegation demonstrating that the defendant engaged in wrongful conduct, this claim should be dismissed for failure to state a claim upon which relief could be granted.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court dismiss plaintiffs' complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Doris S. Finnerman
DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0300
Fax: (202) 305-7643
Attorneys for Defendant