# BIG COUNTRY FAMILY THERAPY ASSOCIATES

A GROUP OF SOLO PRACTITIONERS

**Waymon R. Hinson, Ph.D.**
**Roger A. Russell, Ph.D.**
**Jeff Reese, Ph.D.**

**Janet L. Jergins, LMFT, LPC**
**Hsiao-Wen (Eunice) Moon, LPC, LMFT**
**Anna L. Chancellor, M.A., LPC**
**Denise Hoyt, LMFT, RD/LD**

**Mark E. Lewis, M.MFT., LPC**
**Patrick C. Heard, LPC, LMFT**
**Tim Dunn, M.A., M.DIV., LPC, LMFT**

July 17, 2006

James Myart, J.D.
1104 Denver Blvd.
San Antonio, Texas 78210

RE: LaVerne Williams

In view of LaVerne Williams' current physical and mental status, it is not advisable for her to participate in court/mediation proceedings that require travel at this time. She continues to suffer from the intensity of the cumulative stress of discrimination and these procedures upon her. An additional period of time is recommended during which time she will have the opportunity to recover and thereby participate fully in the hearings.

Please see attached the most recent psychological evaluation of Mrs. Williams. Her condition remains essentially unchanged since this report was written.

Please feel free to contact me if I can provide more specific information.

Sincerely,

Waymon R. Hinson, Ph.D.
Psychologist

**1049 North Third, Suite 505, Abilene, Texas 79601 Telephone: (325) 672-8883 Fax: (325) 675-5833**

Mailed to ... 10/18/05

# BIG COUNTRY FAMILY THERAPY ASSOCIATES

A GROUP OF SOLO PRACTITIONERS


Waymon R. Hinson, Ph.D.
Roger A. Russell, Ph.D.

Janet L. Jergins, LMFT, LPC
Hsiao-Wen (Eunice) Moon, LPC, LMFT
Anna L. Chancellor, M.A., LPC

Mark E. Lewis, M.MFT., LPC
Patrick C. Heard, LPC, LMFT
Tim Dunn, M.A., M.DIV., LPC, LMFT


## Psychological Evaluation

**Clients: Robert and LaVerne Williams**
**Referral: James Myart, J.D.**
**Instruments: Clinical Interview, Brief Symptoms Interview, Quality Of Life Inventory**

**DOB: 1/11/45 (RW); 10/15/48 (LW)**
**Race: African-American**
**Date of Interview: 10/17/05**
**Therapist: Waymon Hinson, Ph.D.**

**Referral:** James Myart, J.D., of San Antonio, Texas, requested a follow-up psychological evaluation with M/M Williams in view of the discrimination suit filed by them against the USDA that originated in 2003.

**Background:** Robert Williams, a sixty-year old farmer, is the oldest of twelve children born to Hill and Mineola Williams. Describing his family as poor but close and living as a farming family, previous interviews indicate that his maternal grandparents were sold as slaves in Georgia and Mississippi. This is Mr. Williams's second marriage. From his first marriage he has two children. LaVerne Williams, fifty-six years of age, was previously married and from her first marriage she has three children. They married in 1973 and report a commitment not each other though one that is tested by the dealings with the USDA. Mrs. Williams is the fifth of seven children both to a father who was a minister and an engineer with Rolling Plains Compress. She reports that her family was close and very religious.

Mr. Williams is currently self-employed as farmer although he does help with routine matters at the restaurant that Mrs. Williams supervises. Mrs. Williams' work history includes working in the Billing and Collections Department for the Water Department for the City of Sweetwater where she was office manager until her retirement due to health problems in 2000. Despite her multiple health problems, she supervises a number of employees at her mother's restaurant in order to make ends meet. She officially received disability in 2002 after several rounds of denial despite being under the care of numerous physicians and a psychologist.

Mr. and Mrs. Williams originally filed a lawsuit against the USDA in the early 1990s due to discrimination involving a variety of issues including purchase of a farm at an inflated price, exaggerated estimates of the land's productivity, and an inability to receive enough funds from FmHA and local banks to farm adequately. Hostile relationships within the local FmHA office during that time intensified the Williams' attempt to farm. The lawsuit was settled in 1997 with debt retirement and a clear title to the land.

1049 North Third, Suite 505, Abilene, Texas 79601 Telephone: (325) 672-8883 Fax: (325) 675-5833

At that time, M/M Williams report, they were required by the USDA to work with the local chapter office in Fisher County, receiving assurance from the USDA that they would have no troubles receiving adequate support to continue farming. They report that driving to Fisher County for his farming operation in 2002 presented numerous difficulties for him, since his own local county was close by. Shortly thereafter, difficulties arose and he was instructed to move his loan application processes to San Angelo in Tom Green County. Though requiring long drives from his location in Roscoe, they report that the FSA officer, Fred Greenway, dealt with them fairly for six or seven months, even working to help Mr. Williams secure his first cotton stripper, before he was promoted to Austin. Thereafter, they were moved back to Fisher County where the Williams assert that the local FSA officer began to contact local farmers for the express purpose of securing liens against their property, holding his farming checks, and attempting to drive them out of farming. Soon thereafter, the Williams were required to return to Nolan County, the county of their residence, to work with FSA. That has proved to be an untenable option given that the FSA county officer who was originally involved in the earlier discrimination complaints continues to work in that office. Then in 2003, the FSA/USDA denied Mr. Williams access to funding for his farming operation. Additionally, M/M Williams assert that once their case was settled with the USDA, all support as promised by a variety of persons working on behalf of the USDA has not been forthcoming. They mention in particular Fred Isler and Clyde Thompson.

Additionally, they assert that the local FSA official, Mr. Cumbie, has encouraged other farmers via Ware Brown, to secure names on a petition from other farmers, supporting the idea that Mr. Williams is an incompetent farmer. These actions have resulted in the loss of a financial relationship with a bank in Snyder, Texas.

At the current time, Mr. Williams has a loan through First Financial Bank in Abilene, Texas with the lien on one of his pieces of property held by them. He has cotton growing on his second piece of property, but has had no funding to eliminate the weeds. What could have been a bumper crop will be a modest crop at best due to an inability to receive adequate economic support from the Nolan County FSA office to take care of weeds and to repair his equipment..

Mrs. Williams reports a variety of physical complaints including three heart attacks, the latest in 2002, diabetes type II, numbness in her feet, and problems with her memory. She is on a variety of medications for hypertension, pain in her heart, diabetes, and high cholesterol. Mr. Williams reports that he is taking two medications for hypertension, and a variety of vitamins and minerals for general health purposes.

**Observations:** Mr. and Mrs. Williams present for the clinical interview in casual, comfortable, and clean attire fitting for such an occasion. Both present as lethargic and lacking in energy overall, although there is an engaging, gracious quality to their presentations. They appear cooperative and engaged in the interview process. On occasion, the conversation elicits an energetic response from either or both. There is a

general slowing of all physical functioning in both. Mr. Williams speaks with more animation than does Mrs. Williams who speaks slowly, haltingly, and concretely, often lacking detail. The moods of both appear to be persistently depressed and withdrawn. Their affect can be described as flat, blunt, and depressed. Content of thought on the part of each varies, but is consistently organized around the acute and chronic problems relative to the USDA and their mistreatment. Both present as concrete in their thinking with a narrow range of topics of conversation. Both present and evidence occasion lapses of both long term and short term memory, especially in the case of Mrs. Williams. Mr. Williams on occasion appears to "drift off" from the central conversation. Attention and concentration appear to be significantly impacted by the weightiness of their difficulties. Evidence of the impact upon their marital relationship presents itself on occasion as they refer to past or present conflicts around USDA or other current matters. Mrs. Williams frequently chuckles at her inability to remember details. Both indicate that these ongoing matters have impacted their health and their ability to sleep.

**Test results:** The Brief Symptom Inventory was completed by both individuals. There is a remarkable similarity of their picture of symptoms. Profiles of each indicate both significant and unresolved issues relative to somatic complaints, obsessive-compulsive thinking and behaving, interpersonal sensitivities in the present of other persons, signs and symptoms of depression and anxiety, hostility, phobias, beliefs that others are out to harm them, and an orientation toward withdrawing and alienating themselves from others. Their overall picture related to unresolved emotional issues places them in a category descriptive of persons with significantly elevated and pervasive problems that can potentially worsen as time passes. Additionally, their scores are consistent with persons whose symptoms reflect both chronic and acute levels of stress.

Mr. and Mrs. Williams also completed the Quality of Life Inventory. Their profile is consistent with persons whose quality of life is impaired in terms of economics, work, play, learning, creativity, self esteem, and goals and values. Health concerns are relatively low as well. On the other hand, a number of factors balance out these lower areas. The areas of satisfaction include love, helping, friends, children, relatives, home, neighborhood, and community. In is likely that these positive factors serve as mediating variables in other areas. Overall, therefore, Mr. Williams scores at the 27th percentile and Mrs. Williams scores at the 23rd percentile in terms of their overall quality of life.

**Diagnoses:** Mr. Williams appears to be suffering from a long term mood disorder, i.e., Dysthymic Disorder, Severe, Late Onset; Generalized Anxiety Disorder; and Adjustment Disorder with Disturbance of Mood and Conduct. He reports some issues that could suggest an occasional panic disorder. Mrs. Williams's symptoms are consistent with a person with the diagnosis of Major Depression without Psychotic Features, Severe; Generalized Anxiety Disorder; and Adjustment Disorder with Disturbance of Mood and Conduct. She also reports information that suggests a Social Phobia.

**Summary and recommendations:** The clinical presentation, self report data, and test data are consistent in their presentation of persons who are impacted individually and collectively by both the acute and chronic nature of discriminatory actions and attitudes by those who have the capability of supporting their ability to farm, support themselves economically, and function as citizens who contribute to others in their community. Test results are consistent with persons who evidence significant unresolved issues relative to somatic complaints, obsessive-compulsive thinking and behaving, depression, anxiety, hostility, phobias, paranoid thinking, and alienation from others, all symptomatic of acute and chronic stress that is unrelenting. Their diagnoses are consistent with persons who are in outpatient psychotherapy, and they are encouraged to seek therapy so as to minimize the severity of their symptoms and to seek further coping strategies.

Respectfully submitted,

Waymon R. Hinson, Ph.D.
Psychologist