IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ROBERT WILLIAMS and LAVERNE WILLIAMS** | ) | |
| **Plaintiffs** | ) | |
| **v.** | ) | **No. 06-124C (Judge Williams)** |
| **THE UNITED STATES OF AMERICA** | ) | |
| **Defendant** | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Robert and Laverne Williams file this **Plaintiffs' Response to Defendant's Motion to Dismiss a**nd would show good cause that this matter, nor any claim herein, should be dismissed as follows:

## A. SUMMARY OF OPPOSITION AND AFFIRMATIVE STATEMENT

1. The Defendant here attempts, as she did in the District Court, to employ the judicial rules to simply deny these Plaintiffs, at all costs, their day in a court, any court of competent jurisdiction[1]. Judge Allegra's published opinion in ***Stovall v. United States of America,*** a case directly on point with the ***Williams*** matter, is attached in its entirety; same being incorporated herein as if fully stated verbatim.

---

[1] See ***Stovall v. United States of America***, 05-400C, FN9, (Ct CL July 5, 2006), Published Opinion of the Honorable Judge Allegra in which Judge Allegra seems to severely admonish this Defendant for her duplicitous legal arguments, as in the case at bar, to wit:

> **". . .Nonetheless, having the United States take inconsistent positions before sister courts Is hardly a trifling matter, particularly where the case involves serious claims of racial discrimination."**

2. This Court should once and for all estopp, and perhaps even sanction, the Defendant from arguing duplicitous positions on the same legal issues depending upon the forum under which a matter involving the same parties and circumstances is tried.

3. Plaintiff respectfully states, the Defendant - **"THE LADY DOTH PROTEST TOO MUCH, ME THINKS."** -HAMLET, ACT III, SCENE II.

4. While Plaintiffs' recognize that a referral by a US District Judge to the Claims Court does not necessarily confer jurisdiction of a matter on the Claims Court, the ruling by the Honorable United States District Judge Collen Kollar-Kotelly in this very matter, as presented to the district court, is instructive. Judge Kollar-Kotelly opined that Plaintiffs' breach of contract claims and Plaintiffs claim of fraudulent inducement during the negotiations and execution of the 2002 Settlement Agreement are within the exclusive jurisdiction of the Court of Claims.[2]

---

[2] ***Williams v. Veneman,* 03-2245(CKK)(July 2005) p.10, 11** **(COURT'S REFERAL TO COURT OF CLAIMS)**

***3. Contract Law Claims***

**To the extent that Plaintiffs are making contract claims against Defendant regarding the 2002 settlement agreement, this Court lacks jurisdiction over such claims. The Tucker Act, 28 U.S.C. § 1346, gives the Court of Federal Claims exclusive jurisdiction over contract claims exceeding $10,000. *Stovall*, 2005 U.S. Dist. LEXIS 5188, at *14-15 (citing 28 U.S.C. § 1346(a)(2), *Mitchell*, 463 U.S.at 215); *see also Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003) ("[C]laims 'exceeding the $10,000 jurisdictional ceiling . . . are within the exclusive jurisdiction of the Court of Claims.'") (quoting *Goble v. Marsh*, 684 F.2d 12, 15 (D.C. Cir. 1982)).**

**In this circuit, a settlement agreement is considered a contract for the purposes of the Tucker Act. *Shaffer v. Veneman*, 325 F.3d 370, 372 (D.C. Cir. 2003). Therefore, Plaintiffs claim that Defendants' fraudulently induced them to enter into the 2002 settlement agreement is under the exclusive jurisdiction of the Court of Federal Claims. *Hansson v. Norton*, No. 04-5157, 2005, 11 U.S. App. LEXIS 10799, at *1 (D.C. Cir. June 10, 2005) ("This court generally treats settlement agreements as contracts subject to the exclusive jurisdiction of the Court of Federal Claims."); *see also Brown v. United States*, 389 F.3d 1296, 1297 (D.C. Cir. 2004) ("[B]ecause this contract question arises in a suit against the United States for more than $10,000 in damages, jurisdiction to decide whether the Department breached the settlement agreement lies exclusively in the Court of Federal Claims.")**

**Plaintiffs' claims about allegedly fraudulent behavior by Messrs. Isler or Thompson during the settlement negotiations could be appropriate in the Court of Federal Claims if the Plaintiffs were challenging the formation of the settlement under a contract claim. Because any potential contract claim would have to be brought before the Court of Federal Claims, Defendants' motion to dismiss Plaintiffs' claims relating to the size of the settlement agreement and Defendants' behavior during negotiations shall be granted.**

**B. PROCEDURAL HISTORY, FACTS AND STANDARD OF REVIEW**

5. In the interest of brevity and judicial economy, Plaintiff incorporates, without waiving any rights or claims, herein by reference and adopts, in entirety, Defendant's titled subparagraphs, to wit: **QUESTIONS PRESENTED, STATEMENT OF FACTS**, and **ARGUMENT**, I. Legal Standards Pursuant to RCFC 12(b)(1) And 12(b)(6).

**C. COURT SHOULD DENY THE DEFENDANT'S ARGUMENT POINTS**

1. Plaintiff's Claim That The Government breached The 2002 Settlement Agreement Must Be Dismissed For lack Of Subject Matter Jurisdiction Because It Fails To Present A Claim For Actual Money Damages That Are Presently Due

2. Alternatively, Plaintiffs Claim Should Be Dismissed Because It Is Not Ripe

3. Plaintiffs' Claim For Fraud, Misrepresentation, And Coercion In Formation Of The Settlement Agreement Must Be Dismissed

6. The Honorable Judge Allegra disposes of the defendant's points as follows:

**II. DISCUSSION**

The plain language of the Tucker Act applies to claims based upon "any express or implied contract with the United States." Regarding this language, the Federal Circuit has repeatedly stated – "[A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government." *Massie v. United States*, 166 F.3d 1184, 1188 (Fed. Cir. 1999) (citing *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997)); *see also Cal. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1346 (Fed. Cir. 2001), *cert. denied*, 534 U.S. 113 (2002). And the decisional law leaves no doubt that settlement agreements generally fall within this definition. *See Massie*, 166 F.3d at 1186; *Hall v. United States*, 69 Fed. Cl. 51, 55 (2005); *see also Kasarsky v. Merit. Sys. Prot. Bd.*, 296 F.3d 1331, 1336 (Fed. Cir. 2002) ("Disputes involving settlement agreements are governed by contract

principles."); *Greco v. Dep't of the Army*, 852 F.2d 558, 560 (Fed. Cir. 1988) ("It is axiomatic that a settlement agreement is a contract."). Despite this, defendant argues that plaintiff's breach claim does not involve a "contract" within the meaning of the Tucker Act because the United States was acting in its "sovereign" capacity when it entered into the relevant settlement agreement. In this regard, it brandishes *Kania v. United States*, 650 F.2d 264, 268-69 (Ct. Cl.), *cert. denied*, 454 U.S. 895 (1981), for the proposition that this court has jurisdiction only over agreements that the United States enters in its proprietary capacity.

To be sure, claims under the Tucker Act must be payable in money. *See United States v. King*, 395 U.S. 1, 3 (1969) (claim presented must be for "actual presently due money damages from the United States"); *N.Y. Life Ins. Co. v. United States*, 118 F.3d 1553**,** 1556 (Fed. Cir. 1997), *cert. denied*, 523 U.S. 1094 (1998) (to invoke this court's jurisdiction, a plaintiff's "claim must . . . be for money"). Yet, for the wide majority of contracts, this requirement is met by a simple presumption – that damages will be available upon a breach. *See Sanders*, 252 F.3d at 1334 ("It is no doubt also true that in the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement."); *see also United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996) ("[D]amages are always the default remedy for breach of contract.") (plurality opinion) (citing, *e.g.*, *Restatement (Second) of Contracts* § 346, cmt. a (1981)). As such, there is no indicating that damages will be paid upon a breach. The twin seminal cases describing the money-mandating requirement, *United States v. Testan*, 424 U.S. 392, 398 (1976) and *Eastport S.S. Corp. v. United States*, 372 F.2d 1002 (1967), are consistent with this view, as they were careful to exclude from that analysis contract cases. Cases in this court that can be read [7] otherwise appear to conflate the requirement that claims be payable in money with the *Eastport* money-mandating analysis, thereby abetting, at the least, erroneously theorized judgments. *See*, *e.g.*, *Schnelle v. United States*, 69 Fed. Cl. 463, 466 (2006); *Griswold v. United States*, 61 Fed. Cl. 458, 465-66 (2004); *Lee v. United States*, 33 Fed. Cl. 374, 378 (1995). Rather, the requirement that there be unmistakable language mandating a payment upon a breach applies only to the relatively narrow band of cases that can be correctly characterized as involving agreements only entered into by the sovereign. To recur, were the law otherwise, this court would have lacked jurisdiction over *Winstar* and all of its various progeny, none of which involved contracts containing "money mandating" language. *See generally*, *San Juan City College*, 391 F.3d at 1361 ("Normally contracts do not contain provisions specifying the basis for the award of damages in case of breach, with the exception of provisions governing damages in particular situations, such as liquidated damages for delay or other specified breaches.").

***Stovall v. United States of America***, 05-400C, FN9, (Ct CL July 5, 2006), Published Opinion of the Honorable Judge Allegra.

7. Defendant's position that Plaintiff's claim is not ripe is just simply ridiculous as the USDA has denied over and over the Plaintiffs complaints, the very reasons the Plaintiffs have gone to two (2) federal courts.

8. The Honorable Judge Collen Kollar-Kotelly has disposed of Defendant's argument that fraud, deceit and mis-representation is clearly within the purview of the

Claims Court. See fn2, this brief.

**D. <u>CONCLUSION</u>**

3. Defendant, as the Claims Court has previously observed, has totally mis-framed the issues in the case at bar. Yet, amazingly, Defendant continues in legal efforts to attempt to defeat these Plaintiff and other black farmers like him by doing the following:

(a) espousing contradictory legal positions regarding this Court's jurisdiction over this or similar matters in distinctly different judicial forums for the mere purpose – to win at all costs;

(b) misrepresenting the legal position of the sovereign when it performs certain functions, i.e., acting as a lender of last resort as it does for farmers;

(c) differentiating the functions of the USDA internal agencies relating to program performance, i.e. Office of Civil Rights and the Farm Service Agency, so as to attempt to relieve the United States of America (USDA) from liability; and

(d) remaining insistent on insuring that Plaintiffs, and others similarly situated, retain statutory and regulatory rights but not be afforded a remedy in this or any other court, a circumstance which results in a judicial absurdity and absolute injustice.

4. Unquestionably, this Court has jurisdiction over the illegal contract inducement (laches) by government employees of the Plaintiffs and the breach of contract claims in this matter as well as the legal authority to decide the issues before it, the appropriate damages due Plaintiffs because of the government's breach of that very agreement, USDA/Williams Resolution Agreement. ***<u>Massie v. United States</u>***, 226 F.3d 1318, 1321 (Fed. Cir. 2000).

Plaintiffs pray the Court deny the Defendant's imprudent dismissal motion, consider sanctions and order the Defendant to stand trial.

Respectfully submitted,

James W. Myart, Jr. P.C.
1104 Denver Blvd, Suite 300
San Antonio, Texas 78210
Phone: (210) 533-9461
Fax: (210) 533-4815

By:______________________________
James W. Myart, Jr.
Federal Bar No. TX 0021

ATTORNEYS FOR PLAINTIFFS