# ADDENDUM

INDEX TO ADDENDUM

Williams v. Veneman, No. 03-2245 (CKK), Memorandum Opinion, (D.D.C. July 5, 2005)

Williams v. Veneman, No. 03-2245 (CKK), Memorandum Opinion, (D.D.C. October 24, 2005)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT WILLIAMS, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>ANN M. VENEMAN, Secretary ,<br>Department of Agriculture, *et al.*,<br><br>Defendants. | Civil Action No. 03-2245(CKK) |

**MEMORANDUM OPINION**
(July 5, 2005)

This case presents the question of whether Defendants violated the Equal Credit Opportunity Act ("ECOA") and the Fifth Amendment in the settlement of a 2002 discrimination claim by Plaintiffs and in the denial of Plaintiffs' 2003 application for a farm loan from the United States Department of Agriculture ("USDA"). After consideration of Plaintiffs' Amended Complaint ("Complaint"), Defendants' Renewed Motion to Dismiss[1] ("Motion to Dismiss") brought under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Response in Opposition to Defendants' Renewed Motion to Dismiss ("Opposition"), Defendants' Reply in Support of the Renewed Motion to Dismiss ("Reply"), and the relevant case law, the Court will grant Defendants' Motion to Dismiss.

[1]Defendants have moved to dismiss all claims raised in Plaintiffs' Amended Complaint, except Plaintiffs' claim under the Equal Credit Opportunity Act with respect to the denial of Plaintiffs' 2003 application for a farm loan. This claim remains to be addressed separately. Defendants' Motion to Dismiss requests dismissal of Plaintiffs' Fifth Amendment claim and ECOA claim with respect to the 2002 settlement agreement, as well as Plaintiffs' Fifth Amendment claim with respect to the denial of their 2003 loan application.

## I: FACTUAL BACKGROUND

Plaintiffs Robert and Laverne Williams, African-American farmers, come before the Court alleging discrimination in violation of the Fifth Amendment[2] and ECOA, 15 U.S.C. § 1691. The action includes charges against Ann Veneman in her official capacity, as then-Secretary of the USDA,[3] and Frederick Isler, and Clyde Thompson, in both their official capacities as agents of the USDA and in their individual capacities. Am. Compl. at 1.

Plaintiffs operate a small farm in Roscoe Texas.[4] Am. Compl. ¶ 11. In January 2002, Plaintiffs applied to the Farm Service Agency ("FSA") for a loan to operate their farm. *Id.* ¶ 15. On or about April 10, 2002, Plaintiffs contacted Carolyn Cooksie, the Assistant Administrator of the FSA to discuss concerns about the handling of their loan application. *Id.* ¶ 19. Plaintiffs subsequently paid off liens on their property in order to expedite the processing of their loan request. *Id.*

In May, 2002, Plaintiffs filed a discrimination complaint with the USDA's Office of Civil Rights ("OCR") alleging discrimination by the USDA in the processing of their loan. *Id.* ¶ 20. Defendants Isler and Thompson traveled to Texas to interview the Plaintiffs and obtain more

---

[2]Plaintiffs' Complaint alleges Fifth Amendment Violations. Am. Compl. ¶ 33. Plaintiffs' Opposition refers however to violations of the Fourteenth Amendment. Opp'n ¶ 1. Because Fourteenth Amendment claims cannot be brought against the federal government, the Court will assume that Plaintiffs are referring to the Fifth Amendment. The Fifth Amendment provides guarantees of equal protection against the federal government similar to those that the Fourteenth Amendment provides against states. *See Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975); *Bolling v. Sharpe*, 347 U.S. 497 (1954).

[3]Ann Veneman has since been replaced as the Secretary of the USDA by Mike Johanns.

[4]In a motion to dismiss under Rule 12(b)(6), the Court must accept the allegations in the Plaintiffs' complaint as true. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).

information about their discrimination complaint. *Id.* ¶ 22. Plaintiffs' attorney did not attend the meeting with Defendants. *Id.* During the meeting, Plaintiffs agreed to the terms of the agreement that they ultimately signed on August 13, 2002, to settle their discrimination claim. *Id.* ¶ 23. The agreement discharged Plaintiffs of all debt owed to FSA and provided the Plaintiffs with $25,000 in compensatory damages and additional compensation for attorney's fees. 2002 Settlement Agreement ¶¶ 1-3. In exchange, Plaintiffs agreed to withdraw their discrimination complaint and not to file "any new administrative complaints arising from the events and issues set forth in these complaints." *Id.* ¶ 4. Plaintiffs also agreed to accept the settlement agreement as "a full, final and complete settlement" of all claims that they might have against the USDA "based on facts occurring prior to the date of [the] agreement." *Id.* ¶ 5.

Plaintiffs now allege in their Complaint, that the "[a]greement was valued far less than the value of Plaintiffs' claim" and that Messrs. Isler and Thompson coerced them to terminate their attorney and pressured them into agreeing to the 2002 Resolution Agreement. *Id.* ¶¶ 22-23. Plaintiffs state that Defendants "told Plaintiffs that the $25,000.00 [settlement] was for payment of Plaintiffs' tractor and not for compensatory damages," *id.* ¶ 23, and assured them that their "case would be settled." *Id.* ¶ 22.

In 2003, Plaintiffs applied to the FSA for another farm operation loan. Am. Compl. ¶ 28. This application was denied. *Id.* In June 2003, Plaintiffs filed an administrative complaint with the OCR alleging discrimination on the basis of race in the FSA's denial of their 2003 loan application. *Id.* ¶ 29.

**II: LEGAL STANDARD**

"In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim . . . the court

must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. at 915; *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While the Court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are not supported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276. Moreover, the Court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the Court may take judicial notice, and matters of public record. *See St. Francis Xavier Sch.*, 117 F.3d at 624; *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (stating that when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

**III: DISCUSSION**

***A. 2002 Equal Credit Opportunity Act Claims***

ECOA prohibits discriminatory conduct on the basis of race by a creditor against an applicant in credit transactions. 15 U.S.C. § 1691(a). Under ECOA, "credit" is defined as the

"right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." § 1691a(d). An "applicant" is "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." § 1691a(b). A "creditor" is defined as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." § 1691a(e).

The FSA extends credit to farmers and is therefore a creditor under ECOA. *Stovall v. Veneman*, No. 04-319 (RMC), 2005 U.S. Dist. LEXIS 5188, at *8 (D.D.C. Jan. 24, 2005). The 2002 settlement discharges Plaintiffs of debt owed to the FSA from previous loans. Settlement Agreement ¶ 1. Referring to that part of the settlement, Plaintiffs claim that "[t]he handling of the 2002 Resolution Agreement [sic] . . . can be considered a credit transaction in itself [sic] given that it addressed loans currently outstanding." Am. Compl. ¶ 40. This assertion is not consistent with ECOA, which only provides a remedy for credit discrimination claims such as a failure by a government agency to investigate complaints of discrimination in credit transactions. *See Wise v. Glickman*, 257 F. Supp. 2d 123, 127 (D.D.C. 2003).

The discharge of a debt owed to the FSA or any other creditor cannot be a credit transaction under ECOA because ECOA does not extend to agreements in which a creditor is discharging a debt, rather than granting credit or deferring payment. "The hallmark of 'credit' under the ECOA is the right of a party to make deferred payment." *Riethman v. Berry*, 287 F.3d 274, 277 (3rd Cir. 2002). ECOA therefore cannot apply to agreements, such as the 2002

agreement, that lack a deferred payment arrangement or are not an application for credit. *See, e.g.*, *Ulico Cas. Co. v. Superior Mgmt. Servs.*, 89 Fed. Appx. 278, 279 (D.C. Cir. 2004) (affirming district court's holding that neither surety bonds nor an indemnity agreement qualified as a credit transaction under ECOA and its Virginia counterpart because there was no right in such relationships "to defer payment"); *Riethman*, 287 F.3d at 279 (affirming district court's holding that ECOA did not apply to a fee agreement between attorneys and their former client when the agreement did not involve right for the debtor to defer payment); *Shaumyan v. Sidetex Co.*, 900 F.2d 16, 18 (2d Cir. 1990) ("[T]he ECOA extends only to instances in which the right to defer payment of an obligation is granted. Absent a right to defer payment for a monetary debt, property or services, the ECOA is inapplicable.").

While ECOA prohibits discrimination "in any part of a credit transaction," the 2002 settlement did not defer payments or grant a right to defer payment in the future. Settlement Agreement ¶¶ 1-9. Plaintiffs do not allege in their pleadings that discrimination occurred as it related to the discharge of their debt or the FSA's payment as part of the 2002 settlement agreement. As part of that agreement, Plaintiffs are not applying to the FSA for extension, renewal, or continuation of credit and are therefore not applicants for credit under ECOA. *See* § 1691a(d). Because ECOA does not apply to an agreement that merely discharges a party of all debt owed to the FSA as part of a settlement and does not involve the right to defer payment for a monetary debt, Plaintiffs' claims under ECOA relating to the 2002 settlement agreement shall be dismissed.

***B. Constitutional Claims Related to 2002 Settlement Agreement***

Plaintiffs also bring claims under the Fifth Amendment against Defendants in both their official and individual capacities for alleged discrimination in the formation of the 2002 Settlement Agreement. First, Plaintiffs argue that they have been deprived of life, liberty, and property without due process of the law. Am. Compl. ¶ 33. Second, Plaintiffs contend that they have been denied equal treatment under the law. *Id.* In addition to monetary damages, Plaintiffs seek to enjoin Defendants from denying any loan applications submitted by Plaintiffs while their action is pending. *Id.* ¶ 34.

***1. Official Capacity Claims***

"Constitutional claims for money damages against federal agencies are claims against the United States." *Stovall v. Veneman*, No. 04-319 (RMC), 2005 U.S. Dist. LEXIS 5188, at *11 (D.D.C. Jan. 24, 2005) (citing *Clark v. Library of Congress*, 750 F.2d 89, 103-04 (D.C. Cir. 1984)). Sovereign immunity bars suits for money damages against the United States or federal officials acting in their official capacity, absent a specific waiver of sovereign immunity by the government. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (internal quotation marks and brackets omitted). The D.C. Circuit's decision in *Clark* bars suits for money damages against officials for actions taken in their official capacity absent a waiver. *Clark*, 750 F.2d at 103 ("Sovereign immunity . . . bar[s] suits for money damages against officials in their *official* capacity absent a specific waiver by the government."); *see also Stovall*, 2005 U.S. Dist. LEXIS 5188, at *11 ("The D.C. Circuit has recognized the well-established rule that sovereign immunity bars suits for money damages against officials in their official capacity,

absent a specific waiver by the government.") (internal quotation marks and citations omitted). In *Clark*, the court held that a suit against the Librarian of Congress for actions taken in his official capacity was barred because there was no applicable waiver of sovereign immunity. *Clark*, 750 F.2d at 103. Similarly, there is no statutory waiver for Plaintiff's constitutional claims for money damages against Defendants. Plaintiffs' constitutional claims for monetary damages against Defendants for actions taken in their official capacities as agents of the USDA shall therefore be dismissed.

*2. Individual Capacity Claims*

Plaintiffs also seek damages for violation of their constitutional rights against Defendants Isler and Thompson in their individual capacities related to the 2002 settlement. Am. Compl. at 1. The 2002 Settlement Agreement contained a complete waiver of any and all claims arising out of actions preceding the settlement. Settlement Agreement ¶ 5. Given that the terms of the 2002 settlement bars Plaintiffs from pursuing claims based on discrimination that occurred before that settlement was reached, Plaintiffs are only left with three possible individual capacity claims against Defendants. Plaintiffs could potentially argue (1) that the negotiations leading to the 2002 settlement were discriminatory, (2) that the terms of the agreement itself are discriminatory or (3) that the settlement was induced through fraudulent behavior by Defendants.

In support of their Fifth Amendment claims against the Defendants in their individual capacities, Plaintiffs assert that "Defendants' acts in obtaining the 2002 Resolution Agreement were clearly discriminatory . . . ." Am. Compl. ¶ 23. In making this assertion, Plaintiffs are apparently referring to (1) their allegation that the "[a]greement was valued far less than the value

of Plaintiffs' claim" and (2) their claim that Messrs. Isler and Thompson coerced them to terminate their attorney and pressured them into agreeing to the 2002 Resolution Agreement. *Id.* ¶¶ 22-23. Plaintiffs claim that Defendants "told Plaintiffs that the $25,000.00 [settlement] was for payment of Plaintiffs' tractor and not for compensatory damages," *id.* ¶ 23, and assured them that their "case would be settled." *Id.* ¶ 22.

In response to these allegations, Defendants' argue that the Constitution does not prohibit a settlement for an amount that is less than the original claim. Mot. to Dismiss at 9. Defendants maintain that a reasonable settlement should reflect the possibility that the plaintiff might not prevail at trial and is therefore likely to be for an amount less than the plaintiff's original claim. *Id.* Defendants also respond that the Fifth Amendment protects life, liberty and property, which were not jeopardized by Defendants conduct during the settlement negotiations. *Id.*

To show a deprivation of due process under the Fifth Amendment, Plaintiffs must demonstrate that they were deprived of a liberty or property interest to which they are entitled without due process of law. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). In their pleadings, Plaintiffs have not shown that their life, liberty or property were jeopardized either by the Defendants' conduct during the settlement negotiations or by the amount of the settlement. In particular, there is no argument by Plaintiffs suggesting that the value of Plaintiffs' settlement was somehow less than other comparable settlements negotiated by Defendants. Plaintiffs have also failed to respond to the Defendants' arguments relating to the size of the settlement or the Defendants' behavior during negotiations and have therefore

conceded those points. *See, e.g.*, *Day v. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded."); *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

Having failed to respond to Defendants' arguments, Plaintiff have not shown discriminatory conduct or injuries resulting from Defendants' agents' conduct in the negotiations.

### *3. Contract Law Claims*

To the extent that Plaintiffs are making contract claims against Defendant regarding the 2002 settlement agreement, this Court lacks jurisdiction over such claims. The Tucker Act, 28 U.S.C. § 1346, gives the Court of Federal Claims exclusive jurisdiction over contract claims exceeding $10,000. *Stovall*, 2005 U.S. Dist. LEXIS 5188, at *14-15 (citing 28 U.S.C. § 1346(a)(2), *Mitchell*, 463 U.S.at 215); *see also Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003) ("[C]laims 'exceeding the $10,000 jurisdictional ceiling . . . are within the exclusive jurisdiction of the Court of Claims.'") (quoting *Goble v. Marsh*, 684 F.2d 12, 15 (D.C. Cir. 1982)).

In this circuit, a settlement agreement is considered a contract for the purposes of the Tucker Act. *Shaffer v. Veneman*, 325 F.3d 370, 372 (D.C. Cir. 2003). Therefore, Plaintiffs claim that Defendants' fraudulently induced them to enter into the 2002 settlement agreement is under the exclusive jurisdiction of the Court of Federal Claims. *Hansson v. Norton*, No. 04-5157, 2005

U.S. App. LEXIS 10799, at *1 (D.C. Cir. June 10, 2005) ("This court generally treats settlement agreements as contracts subject to the exclusive jurisdiction of the Court of Federal Claims."); *see also Brown v. United States*, 389 F.3d 1296, 1297 (D.C. Cir. 2004) ("[B]ecause this contract question arises in a suit against the United States for more than $10,000 in damages, jurisdiction to decide whether the Department breached the settlement agreement lies exclusively in the Court of Federal Claims.").

Plaintiffs' claims about allegedly fraudulent behavior by Messrs. Isler or Thompson during the settlement negotiations could be appropriate in the Court of Federal Claims if the Plaintiffs were challenging the formation of the settlement under a contract claim. Because any potential contract claim would have to be brought before the Court of Federal Claims, Defendants' motion to dismiss Plaintiffs' claims relating to the size of the settlement agreement and Defendants' behavior during negotiations shall be granted.

**C. Injunctive Relief**

While sovereign immunity precludes Defendants from seeking monetary damages for the constitutional claims against the Defendants in their official capacities, it is not necessarily a bar to non-monetary relief for those claims. *See Clark*, 750 F.2d at 102. The 1976 Amendments to the Administrative Procedure Act ("APA") "eliminated sovereign immunity as a defense in virtually all actions for non-monetary relief against a U.S. Agency or officer acting in an official capacity." *Clark*, 750 F.2d at 102 (citing 5 U.S.C. § 702). As Plaintiffs correctly note, they have the right to seek non-monetary relief against Defendants for constitutional violations committed by Defendants in their official capacities. Opp'n ¶ 25. Indeed, Plaintiffs claim to be seeking

non-monetary relief; the Complaint seeks temporary injunctive relief and declaratory relief in addition to monetary damages.[5] Am. Compl. at 16-17.

Even though sovereign immunity does not bar Plaintiffs' claims for non-monetary relief, the non-monetary relief sought by the Plaintiffs is still not proper. Plaintiffs seek to enjoin the Defendants from "continuing unlawful discriminatory practices . . . ." Am. Compl. at 17. This is a vague request and is not tailored to specific government conduct that Plaintiffs have identified as discriminatory. Plaintiffs also seek a "declaration that the USDA has violated . . . ECOA as well as Plaintiffs' Fifth Amendment rights . . . ." *Id.* A declaration by the Court on the ECOA claims would not be proper since ECOA does not apply to these 2002 settlement claims, *see supra* § III A, and a declaration on Constitutional violations would necessarily be provided only in a decision that their Constitutional rights had been violated, which the Court has not found.

The mere presence of the word "injunction" in the Amended Complaint does not mean that the Plaintiffs have sufficiently pled a request for injunctive relief. *See Ward v. Kennard*, 133 F. Supp. 2d 54, 59 (D.D.C. 2000). Failure to sufficiently plead a request for injunctive relief

[5]Plaintiffs argue that their "First Amended Complaint clearly seeks injunctive relief against Defendants for violations of Plaintiffs' Fourteenth Amendment rights by Defendants acting in their official capacities." Opp'n ¶ 25. The Court finds Plaintiffs' prayer for relief to be anything but clear. First, it shows a failure to discern between the Fifth and Fourteenth Amendments. *See supra* n.1. Second, it requests a "temporary injunction." The Court assumes that Plaintiffs are referring to a "temporary restraining order." However, Plaintiffs did not file a distinct request for a temporary restraining order. Local Civil Rule 65.1 requires that a request for a temporary restraining order be made in a "separate motion from the complaint," and "accompanied by a certificate of counsel." LCvR 65.1(a). The Court will not consider an *ex parte* application "[e]xcept in an emergency." *Id.* Because Plaintiff did not properly request a temporary restraining order through a separate motion or contact chambers indicating any special urgency suggesting that the Court should grant an *ex parte* application, the Court will not consider Plaintiff's request for a "temporary injunction."

means that the portion of the complaint seeking injunctive relief must be dismissed. *Id.* In *Ward*, another judge on this Court dismissed a complaint alleging violations of the Fifth and Fourteenth Amendments when the plaintiffs failed to specify the form of injunctive or specific relief sought. *Id.* The Court is not convinced that Plaintiffs' "request for injunctive relief for violations of their Fourteenth Amendment rights," Opp'n ¶ 34, is sufficiently specific. It is not clear what the Plaintiffs would ask the Court to enjoin. As Defendants note, the only injunctive relief that the Plaintiffs could be seeking for the alleged Constitutional violations is to enjoin Defendants from discriminating against them in future settlements with the Defendants. Reply at 3.

Even if Plaintiffs' complaint could be read to meet the specificity required for injunctive relief, the Supreme Court's decision in *City of Los Angeles v. Lyons* precludes a plaintiff from seeking injunctive relief to prohibit future unconstitutional acts unless the plaintiff can demonstrate "a real and immediate threat" that he or she is "likely to suffer future injury" from a similar constitutional violation on a subsequent occasion. 461 U.S. 95, 105 (1983). In *Lyons*, the Supreme Court denied injunctive relief to a plaintiff who sought to bar the future application of a chokehold that had previously been used against him by the Los Angeles Police Department ("LAPD") because the plaintiff failed to establish that there was a real and immediate threat that he would again be stopped by the LAPD for a traffic violation and subjected to the chokehold by LAPD officers. 461 U.S. at 105.

Plaintiffs allege that, "[i]f the Court does not grant the requested injunctive relief, Defendants will continue their discriminatory activities against Plaintiffs." Am. Compl. ¶ 34. An unsupported allegation of future discrimination is not sufficient to establish that Plaintiffs

face a realistic and probable threat of discrimination by Defendants. *Lyons*, 461 U.S. at 106 n.7. Under *Lyons*, Plaintiffs would have to show both that they will enter into a future settlement with the USDA and that the Defendants will violate their Fifth Amendment rights in the negotiation and formation of such a settlement. Although Plaintiffs have alleged discrimination in and injuries from the Defendants' actions in the 2002 Settlement Agreement, they have not established a realistic likelihood that such injury will occur in the future.[6] *See* Am. Compl. ¶ 30. Accordingly, Defendants' Motion to Dismiss shall be granted with regard to the non-monetary claims for injunctive relief against the Defendants for actions taken in their official capacities based on Constitutional violations.

### *1. 2003 Loan Application*

Plaintiffs seek injunctive relief relating to their 2003 loan application. Am. Compl. ¶ 34 ("Plaintiffs seek to enjoin Defendants, during the pendency of this action, from denying any loan application submitted by Plaintiffs to the FSA."). Plaintiffs rely on the holding in *Ward* for their claim that sovereign immunity "does not bar claims for non-monetary relief against governmental agencies and officials when the plaintiff alleges unconstitutional action by the defendant agency or official." *Id.* (citing 133 F. Supp. 2d at 59).

It is true that under the APA, sovereign immunity has been eliminated for "virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity." *Clark*, 750 F.2d at102. But the APA does not waive sovereign immunity and allow for judicial

---

[6]The Court notes that Plaintiffs settled a 1995 lawsuit brought against the Secretary of Agriculture under ECOA. Plaintiffs have not made any claims that there was discrimination in the formation or negotiation of the 1995 settlement. *See* Am. Compl. ¶¶ 12-13.

review when some "other adequate remedy" exists in a court. 5 U.S.C. § 704; *see, e.g*, *Bennett v. Spear*, 520 U.S. 154, 175 (1997) ("The APA, by its terms, independently authorizes review only when there is no other adequate remedy in a court.) (internal quotations and citations omitted); *Holly Sugar Corp. v. Veneman,* 355 F. Supp. 2d 181, 191 (D.D.C. 2005) ("[T]here are several limitations on the APA's sovereign immunity waiver. For example, the APA excludes: (1) claims for money damages; (2) claims for which an adequate remedy is available elsewhere; and (3) claims seeking relief expressly or impliedly forbidden by another statute.") (citing 5 U.S.C. §§ 702, 704) (internal quotations omitted).

In conjunction with their claim for equitable relief, Plaintiffs have made a claim under ECOA relating to the denial of the 2003 loan application. Opp'n ¶ 20. Such an ECOA claim is an adequate remedy for claims against the USDA for denial of credit and other benefits including claims of discrimination. *Wise*, 257 F. Supp. 2d at 127; *Love v. Veneman*, No. 00-2502 (JR), 2001 U.S. Dist. LEXIS 25201 at *17 (D.D.C. Dec. 13, 2001).[7] Defendants have therefore not sought to dismiss Plaintiffs' claims under ECOA for denial of the 2003 loan application.[8] Because the ECOA claim stands as an adequate remedy, Defendants are protected by sovereign immunity and Plaintiffs claim for injunctive relief under the Fifth Amendment for denial of the 2003 loan shall be dismissed.

---

[7]Defendants have not sought to dismiss the Plaintiffs' claims under ECOA for denial of the 2003 loan. Def.'s Reply at 1.

[8]The Court notes that ECOA permits injunctive relief as a remedy. *See* 15 U.S.C. § 1691e(c).

## IV: CONCLUSION

After careful consideration of the parties' briefs and the relevant law, the Court finds that Plaintiffs' claims relating to the 2002 settlement arising under the Fifth Amendment and ECOA shall be dismissed. Plaintiffs' request for injunctive relief under the Fifth Amendment with respect to their 2003 loan application shall also be dismissed. Because Defendants have not sought to dismiss Plaintiffs' ECOA claim relating to denial of Plaintiffs' 2003 loan application, that claim remains. An appropriate Order accompanies this Memorandum Opinion.

Date: July 5, 2005

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT WILLIAMS, *et al.*,<br>Plaintiffs,<br>v.<br>MIKE JOHANNS, *et al.*,<br>Defendants. | Civil Action No. 03-2245 (CKK) |

**MEMORANDUM OPINION**
(October 24, 2005)

This case originally presented the question of whether Defendants violated the Equal Credit Opportunity Act ("ECOA") and the Fifth Amendment in the settlement of a 2002 discrimination claim by Plaintiffs and in the denial of Plaintiffs' 2003 application for a farm loan from the United States Department of Agriculture ("USDA"). In an order and accompanying memorandum opinion dated July 5, 2005, the Court granted [16] Defendants' Renewed Motion to Dismiss Plaintiffs' ECOA claim related to the 2002 discrimination settlement and Plaintiffs' Fifth Amendment claims related to both the 2002 settlement and the 2003 farm loan application.[1] The Court is presently ruling on Plaintiffs' [36] Motion to Reinstate and Transfer Contract Claim to the US Court of Claims and for Reconsideration of Dismissal of Constitution [sic] Claim Against Individual Defendants ("Motion to Reconsider"). After consideration of Plaintiffs' Motion to Reconsider, [39] Defendants' Memorandum in Opposition to Plaintiffs' "Motion to Reinstate and Transfer Contract Claim to the US Court of Claims and for Reconsideration of Dismissal of

[1]The Defendants did not move to dismiss (nor did the Court grant a dismissal of) Plaintiffs' ECOA claim related to the 2003 farm loan application, which is scheduled for mediation before Magistrate Judge John M. Facciola on November 3, 2005.

Constitution [SIC] Claim Against Individual Defendants" ("Opposition"), [40] Plaintiff's [sic] Reply Brief to Defendants' Memorandum in Opposition to Motion to Reinstate and Transfer Contract Claim to the US Court of Claims and for Reconsideration of Dismissal of Constitution [SIC] Claim Against Individual Defendants ("Reply"), [27] Plaintiffs' First Amended Complaint ["Am. Compl."], and the relevant case law, the Court hereby orders that Plaintiffs' Motion to Reconsider be DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Robert and Laverne Williams are African-American farmers who operate a small farm in Roscoe, Texas. Am. Compl. ¶ 11. Plaintiffs brought an action against the Secretary of the USDA in his official capacity,[2] as well as Frederick Isler and Clyde Thompson, in both their official capacities as agents of the USDA and in their individual capacities, alleging discrimination in violation of the Fifth Amendment and ECOA, 15. U.S.C. § 1691.

Plaintiffs had applied to the Farm Service Agency ("FSA") for a loan to operate their farm in January 2002. Am. Compl. ¶ 15. In May 2002, Plaintiffs filed a discrimination complaint with the USDA's Office of Civil Rights ("OCR"), alleging discrimination by the USDA in the processing of their loan. Am. Compl. ¶ 20. During a meeting at Plaintiffs' home with Defendants Isler and Thompson (which Plaintiffs' attorney did not attend), Plaintiffs settled their discrimination complaint via an agreement that they ultimately signed on August 13, 2002. Am. Compl. ¶¶ 22, 23. This settlement agreement discharged Plaintiffs of all debt owed to the FSA and provided Plaintiffs with $25,000 in compensatory damages and additional compensation for attorney's fees. 2002 Settlement Agreement ¶¶ 1-3. By signing the agreement, Plaintiffs agreed to withdraw their

[2] While Plaintiffs originally named Ann Veneman as a Defendant in her official capacity as then-Secretary of the USDA, she has been replaced in this action by present Secretary of the USDA Mike Johanns.

Case 1:06-cv-00124-MCW Document 12-2 Filed 11/17/2006 Page 21 of 28

discrimination complaint. *Id.* ¶ 4. Plaintiffs also agreed to accept the settlement agreement as "a full, final and complete settlement" of all claims that they might have against the USDA "based on facts occurring prior to the date of [the] agreement." *Id.* ¶ 5. After Plaintiffs' application to the FSA for another farm operation loan in 2003 was denied, Plaintiffs filed an administrative complaint with the OCR alleging discrimination on the basis of race in the FSA's denial of their 2003 loan application. Am. Compl. ¶¶ 28-29.

Plaintiffs had alleged in their complaint that they were coerced into terminating their attorney and agreeing to the 2002 Settlement Agreement, which, according to Plaintiffs, undervalued Plaintiffs' 2002 discrimination claim. Am. Compl. ¶ 23. Plaintiffs had also alleged that race discrimination was the cause of the FSA's denial of their 2003 loan application. Am. Compl. ¶ 29. Plaintiffs alleged that both the settlement agreement and the denial of their 2003 loan constituted violations of their Fifth Amendment rights and their rights under the ECOA, which prohibits discriminatory conduct on the basis of race. Am. Compl. ¶¶ 34, 39, and 40.

Defendants filed their [16] Renewed Motion to Dismiss on April 30, 2004, requesting that the Court dismiss both of Plaintiffs' Fifth Amendment claims and Plaintiffs' ECOA claim related to the 2002 Settlement Agreement. After considering Defendants' Renewed Motion to Dismiss as well as [18] Plaintiffs' Opposition and [19] Defendants' Reply to said motion, the Court granted Defendants' motion in its [28] Order and accompanying [29] Memorandum Opinion dated July 20, 2005. Therefore, as the Court granted the dismissal, the only claim that presently remains is Plaintiffs' claim that the FSA's denial of their loan application in 2003 violated the ECOA.

Plaintiffs filed the instant motion requesting that the Court reinstate and transfer the dismissed ECOA-based discrimination claim related to the 2002 Settlement Agreement to the U.S. Court of Claims as applied to all Defendants and additionally that the Court reconsider Plaintiffs'

dismissed Fifth Amendment claims related to both the 2002 Settlement Agreement and the denial of Plaintiffs' 2003 loan application as applied to Defendants Isler and Thompson in their individual capacities.

## II. LEGAL STANDARD

While Plaintiffs' did not cite any legal standard under which they brought their motion to reconsider, Defendants' correctly cite to Rule 54(b) of the Federal Rules of Civil Procedure in their Opposition (which Plaintiffs agree to in their Reply) as the appropriate basis under which a party can bring a motion to reconsider dismissed claims when fewer than all claims in an action have been dismissed.

Under Rule 54(b), when more than one claim is presented to the Court,

> the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Accordingly, without express direction for the entry of judgment on particular claims under Rule 54(b), court action which terminates fewer than all claims in a case is considered an interlocutory rather than a final decision and subject to revision at any time. *See also Hill v. Henderson*, 195 F.3d 671, 672 (D.C. Cir. 1999) (holding that a district court order dismissing one of several claims without making an explicit determination under Rule 54(b) is not a final decision subject to appellate review); *Lewis v. United States*, 290 F. Supp. 2d 1, 3 (D.C.C. 2003) (stating that a motion to reconsider dismissal of claims related to one of two parties was properly brought under Rule 54(b) rather than Rule 60). In the instant case, the Court's order granting Defendants' Motion to Dismiss adjudicated fewer than all of the claims in the case, as Plaintiffs ECOA-based

Case 1:06-cv-00124-MCW Document 12-2 Filed 11/17/2006 Page 23 of 28

discrimination claim pertaining to the 2003 loan application remains because it was not addressed in the Motion to Dismiss. Thus Plaintiffs' Motion to Reconsider would have been properly brought under Rule 54(b).

The Court has broad discretion to hear a motion for reconsideration brought under Rule 54(b): "Unlike Rule 60(b) which contains a reasonableness provision, Rule 54(b) allows a court to reconsider its interlocutory decisions 'at any time' prior to a final judgment." *Lewis*, 290 F. Supp. 2d at 3 (quoting Rule 54(b)). The standard for determining whether or not to grant a motion to reconsider brought under Rule 54(b) is the "as justice requires" standard espoused in *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.C.C. 2005), which requires "determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Id. See also Singh v. George Washington University*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). Considerations a court may take into account under the "as justice requires" standard include whether the court "patently" misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred. *See Singh,* 383 F. Supp. 2d at 101. Furthermore, the party moving to reconsider carries the burden of proving that some harm would accompany a denial of the motion to reconsider: "In order for justice to require reconsideration, logically, it must be the case that, some sort of 'injustice' will result if reconsideration is refused. That is, the movant must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration." *Cobell*, 355 F. Supp. 2d at 540.

*Cobell* also suggests that even if justice does not "require" reconsideration of an interlocutory ruling, a decision to reconsider is nonetheless within the court's discretion: "[E]ven if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may

nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." *Id.* at 540. However, the efficient administration of justice requires that a court at very least have good reason to reconsider an issue which has already been litigated by the parties: " 'The district court's discretion to reconsider a non-final ruling is, however, limited by the law of the case doctrine and "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."' " *Singh*, 383 F. Supp. 2d at 101 (quoting *In re Ski Train Fire in Kaprun, Austria, on November 11, 2004*, 224 F.R.D. 543, 546 (S.D. N.Y. 2004) (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.3d 147, 167 (2d Cir. 2003))). Thus if the court chooses to reconsider a motion even if justice does not so require, there must be a "good reason" underlying the parties' re-addressing an already decided issue.

## III. DISCUSSION

In their motion to reconsider, Plaintiffs request that the Court reinstate and transfer Plaintiffs' ECOA claim relating to the 2002 Settlement Agreement to the U.S. Court of Claims. Plaintiffs also request that the Court reconsider Plaintiffs' Fifth Amendment claims against Defendants Frederick Isler and Clyde Thompson in their individual capacities. The Court will analyze both of these requests in turn.

### *A. ECOA Claim*

In order to grant Plaintiffs' motion to reconsider their ECOA claim related to the 2002 Settlement Agreement to reinstate and ultimately transfer the claim to the U.S. Court of Claims, the Court should determine whether reconsideration of this issue is necessary to preclude some harm to Plaintiffs. At very least, the Court must determine that there is a good reason to reconsider the issue by reinstating and transferring the claim.

However, Plaintiffs have not demonstrated that the Court's reinstatement and transfer of this claim to the Court of Appeals is in the interest of justice; they do not give any reason as to what harm Plaintiffs would suffer by bringing their dismissed ECOA claim directly to the U.S. Court of Claims. In dramatic fashion, Plaintiffs allege that "[s]hould the Court not reinstate and transfer the contract claim to the US Court of Claims, the Plaintiffs, [sic] will suffer further economic injury and swift justice will not be accomplished." Motion to Reconsider at 2. However, nowhere in their Motion to Reconsider or in their Reply do the Plaintiffs make any argument as to why they are either unable to bring the ECOA claim before the US Court of Claims themselves or what disadvantage would accompany their directly presenting the ECOA claim to the US Court of Claims.

Nor do Plaintiffs even provide a good reason for the Court to reinstate and transfer Plaintiffs' dismissed contract claim. Citing Judge Rosemary M. Collyer's January 24, 2005 memorandum opinion in *Stovall v. Veneman* (04-cv-319), Plaintiffs merely point out that another judge in this District transferred a claim to the U.S. Court of Claims and suggest that the Court in this case should follow suit because it is "practice" in the D.C. District Court. Motion to Reconsider at 7; Reply at 6-8. However, even noting the obvious fact that one case does not define a "practice" in a particular district, Plaintiffs fail to distinguish that in *Stovall,* Judge Collyer's transfer was effectuated in response to a motion to dismiss[3] (not on a motion to reconsider) because ancillary jurisdiction over the greater than $10,000 contract claim was lacking. *See id.* at 8-9. Plaintiffs state in their Reply that while "transfer of a case from the District Court to the Court of Claims does not confer jurisdiction in any particular matter on the Court of Claims," transfer would "express the D.C. District Court's recognition that certain claims belong in the Court of Claims rather than in the

---

[3] It should be noted that in [18] Plaintiffs' Opposition to Defendants' Renewed Motion to Dismiss, Plaintiffs never raised as an alternative transferring their contract claims to the U.S. Court of Claims, which the Court might have considered at that time.

District Court." Reply at 7. Since the Tucker Act, 28 U.S.C. § 1346(a)(2), itself recognizes this distinction by explicitly stating that district courts share original jurisdiction with the Court of Federal Claims only over claims under $10,000, the Court finds that there is no good reason to reinforce existing statutory law via an "expression."

Accordingly, the Court denies Plaintiffs' request to reinstate and transfer their dismissed ECOA claim to the U.S. Court of Claims.

*B. Fifth Amendment Claims Against Defendants Isler and Thompson in their Individual Capacities*

The Court also finds that Plaintiffs neither demonstrate that reconsideration of their Fifth Amendment claims against Defendants Isler and Thompson in their individual capacities is in the interest of justice nor provide a good reason for reconsidering such claims. Plaintiffs provide few new arguments in their Motion to Reconsider, largely relying on block quotes from their Opposition to Defendants' Motion to Dismiss which purport to show why consideration of their Fifth Amendment claims are in the interest of justice. The Court finds Plaintiffs' use of nearly three pages of single-spaced, ten-point font block quotes of arguments that the Court already determined to be without merit as a waste of the Court's time in light of the fact that the Court explicitly stated in its [35] Scheduling and Procedures Order, filed July 20, 2005, that the Court would not entertain "motions which simply reassert arguments previously raised and rejected by the court." Scheduling and Procedures Order at 5.

The Court also finds that the few new issues that Plaintiffs do raise in their Motion to Reconsider are without merit. Plaintiffs allege that "But for the Defendants' continued discrimination, misrepresentation, coercion, inducement and fraud in the formation of the 2003 settlement, Plaintiffs would have been in a financial position to operate their farm without the loans

and programs offered by Defendants." Motion to Reconsider at 14. However, Defendants neither clarify how the 2002 Settlement Agreement, which absolved Plaintiffs of approximately $400,000 in federal loan debt, could possibly have put Plaintiffs into a worse financial position than had such agreement not been reached. Nor should Plaintiffs raise this argument for the first time in their Motion to Reconsider, as such an argument involves factual allegations that could have been proffered at the time that Plaintiffs initiated their complaint.

Plaintiffs also claim that the 2002 Settlement Agreement "pales in comparison" to the monetary and injunctive relief awarded to black farmers in a number of cases cited by Plaintiffs. Motion to Reconsider at 14. The Court specifically indicated in its Scheduling and Procedures Order that the Court would not entertain "arguments which should have been previously raised, but are being raised for the first time in the 'Motion for Reconsideration.'" Scheduling and Procedures Order at 5-6. It should be noted that all of the cases cited were adjudicated prior to Plaintiffs' initiation of this lawsuit and could have been included in Plaintiffs' Complaint or to refute Defendants' Motion to Dismiss. Furthermore, the fact that some cases raising purportedly similar claims to Plaintiffs' claims settled for larger sums of compensatory damages and injunctive relief does not create a "clear inference" that "something went awry," as Plaintiffs suggest. Motion to Reconsider at 15. First of all, the first case cited by Plaintiffs for this proposition, *Pigford v. Veneman*, 206 F.3d 121 (D.D.C 2000), involved an approximately $2 billion settlement of combined debt relief and monetary payments for a class of approximately 20,000 black farmers. Thus, the *Pigford* settlement granted each farmer an average of approximately $100,000 of combined debt relief and monetary payments; the combined debt relief and monetary payments provided to Plaintiffs, however, totaled well over $400,000. Additionally, settlement negotiations on similar claims need not produce identical kinds or amounts of relief.

The Court will address Plaintiffs' argument that "Plaintiffs Will Face Harsh Sanction Unless Court Provides Relief"[4] in short shrift, as Defendants' Motion to Dismiss was granted on the merits, and not as a sanction against Plaintiffs for some procedural misstep or as a deterrent.

Finally, Plaintiffs' argument that granting a motion to reconsider will not cause irreparable injury to Defendants has no bearing on whether or not reconsideration of Plaintiffs' constitutional claims is necessary to prevent harm to Plaintiffs, nor is it a "good reason" to grant a motion to consider as it does not help Plaintiffs demonstrate why the Court should once again hear Plaintiffs' claims.

## IV. CONCLUSION

After considering the parties' briefs and the relevant law, the Court finds that Plaintiffs have not demonstrated that justice requires, nor presented any "good reason," for reinstatement and transfer of Plaintiffs' ECOA-based discrimination claim to the U.S. Court of Claims or reconsideration of Plaintiffs' constitutional claims. Therefore, the Court hereby denies [36] Plaintiffs' Motion to Reinstate and Transfer Contract Claim to the US Court of Claims and for Reconsideration of Dismissal of Constitution [sic] Claim Against Individual Defendants. An appropriate Order accompanies this Memorandum Opinion.

Date: October 24, 2005

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

[4] Motion to Reconsider at 15.