No. 06-124C
(Judge Williams)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROBERT WILLIAMS and
LAVERNE WILLIAMS,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR RELIEF FROM ORDER AND APPENDIX

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

KIRK T. MANHARDT
Assistant Director

PATRYK J. DRESCHER
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, DC 20530
Tele: (202) 616-0464
Fax: (202) 307-0972

September 16, 2008

Attorneys for Defendant United States

## TABLE OF CONTENTS

ISSUE PRESENTED . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . 1

I. Relevant Facts . . . . . . . . . . 1

II. Procedural History . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . 5

I. Plaintiffs Knowingly And Voluntarily Dismissed Their Case And Are Now Judicially Estopped From Alleging Otherwise . . . . . . . . . . 5

A. Legal Standard . . . . . . . . . . 5

B. Plaintiffs Are Estopped From Alleging That Their Lawsuit Was Dismissed Without Their Knowledge Or Permission . . . . . . . . . . 6

II. Plaintiffs Cannot Prevail Pursuant To Rule 60(b) . . . . . . . . . . 9

A. Legal Standard . . . . . . . . . . 9

B. Plaintiffs Fail The Threshold Inquiry Governing RCFC 60(b)(1) Because Their Claim Is Not Meritorious . . . . . . . . . . 10

C. Plaintiffs Also Fail The Threshold RCFC 60(b)(1) Inquiry Because Their Dilemma Was Caused By Their Own Culpable Conduct . . . . . . . 12

D. RCFC 60(b)(6) Is Inapplicable As Plaintiffs Do Not Present "Any Other Reason Justifying Relief" . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## CASES

Bridgham by Libby v. Secretary of the Department of Health & Human Services, 33 Fed. Cl. 101 (Fed. Cl. 1995) . . . . . . . . . . 13

Curtis v. United States, 61 Fed. Cl. 511 (Fed. Cl. 2004) . . . . . . . . . . 10

Data General Corp. v. Johnson, 78 F.3d 1556 (Fed. Cir. 1996) . . . . . . . . . . 6

Federal's Inc. v. Edmonton Investment Co., 555 F.2d 577 (6th Cir. 1977) . . . . . . . . . . 13

Fiskars, Inc. v. Hunt Manufacturing Co., 279 F.3d 1378 (Fed. Cir. 2002) . . . . . . . . . . 14

Freeman v. Secretary of HHS, 35 Fed. Cl. 280 (Fed. Cl. 1996) . . . . . . . . . . 13

Hall v. United States, 74 Fed. Cl. 391 (Fed. Cl. 2006) . . . . . . . . . . 11

Harbuck v. United States, 378 F.3d 1324 (Fed. Cir. 2004) . . . . . . . . . . 11

Information System & Networks Corp. v. United States, 994 F.2d 792 (Fed. Cir. 1993) . . . . . . . . . . 10, 12

JGB Enterprises v. United States, 71 Fed. Cl. 468 (Fed. Cl. 2006) . . . . . . . . . . 13

Johns-Manville Corp. v. United States, 855 F.2d 1556 (Fed. Cir. 1988) . . . . . . . . . . 11

Koopers Co., Inc. v. Certain Underwriters, 993 F. Supp. 358 (W.D. Pa. 1998) . . . . . . . 8

Latshaw v. Trainer Wortham & Co., Inc., 452 F.3d 1097 (9th Cir. 2006) . . . . . . . . . . 9

Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988) . . . . . . . . . . 15

Link v. Wabash R. Co., 370 U.S. 626 (1962) . . . . . . . . . . 12, 13

Loveladies Harbor, Inc. v. United States, 27 F.3d 1545 (Fed. Cir. 1994) . . . . . . . . . . 11

New Hampshire v. Maine, 532 U.S. 742 (2001) . . . . . . . . . . passim

Pioneer Investment Serv. Co. v. Brunswick Associates Partnership, 507 U.S. 380 (1993) . . . . . . . . . . 12, 13, 15

Primbs v. United States, 4 Cl. Ct. 366, 370 (Cl. Ct. 1984) ........................ 13

Pryor v. U.S. Postal Service, 769 F.2d 281 (5tt Cir. Tex 1985) .................. 13

Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d. Cir. 1996) ................................................ 8

Stelco Holding Co. v. United States, 44 Fed. Cl. 703 (Fed. Cl. 1999) .......... 10, 12

Stovall v. United States, 05-400C (Fed. Cl.) ............................ 3, 6, 8

Teamsters, Local Number 59 v. Superline Transport Co., 953 F.2d 17 (1st Cir. 1992) ................................................ 10

Williams v. Johanns, No. 03-2245 (D.D.C.) ............................ passim

## STATUTES and RULES

28 U.S.C. §1500 ................................................ 1, 4, 11

28 U.S.C. §1746 ................................................ 2

15 U.S.C. § 1691 ................................................ 4

Fed. R. Civ. P. 54(b) ................................................ 12

RCFC 60(b) ................................................ passim

## SECONDARY SOURCES

BLACK'S LAW DICTIONARY 827 (8th ed. 2005) ............................ 10

12-60 MOORE'S FEDERAL PRACTICE - CIVIL § 60.41 ........................ 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT WILLIAMS and LAVERNE WILLIAMS, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 06-124C (Judge Williams) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR RELIEF FROM ORDER**

Pursuant to Rule 60(b) of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully requests that the Court deny plaintiffs' motion seeking reinstatement of their voluntarily-dismissed case. In support of our response, we rely upon this brief and the attached appendix.

**ISSUE PRESENTED**

Whether plaintiffs may reinstate their voluntarily-dismissed lawsuit by claiming "mistake" and "compelling circumstances," where judicial estoppel precludes them from alleging facts clearly inconsistent with their earlier position, and where they ultimately fail to satisfy RCFC 60(b).

**BACKGROUND**

I. Relevant Facts

Just over a year ago, plaintiffs voluntarily dismissed this case with prejudice. Appendix ("App.") 1. Prior to the voluntary dismissal, we moved to dismiss for lack of subject matter jurisdiction on several grounds, including 28 U.S.C. §1500. Defendant's Supplemental Brief

("Def. Supp. Br.") (May 17, 2007). Our motion to dismiss is still pending, should this case be reinstated. Id.

Despite the voluntary dismissal with prejudice, plaintiffs now allege pursuant to RCFC 60(b) that this case was dismissed by their prior counsel without their knowledge or input. Plaintiffs' Motion ("Pl. Mot.") ¶¶5-8. Specifically, plaintiffs now claim – through sworn affidavits submitted with their motion – that they "never had any discussion with [their prior counsel] concerning the dismissal" and that their prior counsel, Mr. Myart, "never asked for [their] opinion or permission to dismiss the above-styled action against the United States." App. 7, 9 (collectively "July 2008 Declarations"). The allegations in the July 2008 Declarations[1] contradict plaintiffs' sworn testimony in other Federal court cases. In November 2007, Ms. Williams submitted an affidavit in their parallel district court case, Williams v. Johanns, No. 03-2245 (D.D.C.) ("Williams I"). App. 12 ("November 13, 2007 Affidavit"). Contrary to plaintiffs' current allegations, Ms. Williams makes clear in her November 13, 2007 Affidavit that she and her husband had knowledge of and approved their former attorney's actions. Specifically, Ms. Williams stated:

> Judge Kollar-Kotelly also issued a ruling that our breach of Contract Claim should be bought [sic] in the Federal Court of Claims. We tried that and that case had to be dismissed as well because, according to Mr. Myart, the law provides that by statute.

App. 18 [emphasis added]. Ms. Williams also reaffirmed that she and her husband specifically discussed the dismissal of this case with their attorney:

> The federal Court Claims case was dismissed. Again, [Mr. Myart] explained to us

---

[1] A declaration is admissible in Federal court with the same effect as an affidavit. 28 U.S.C. §1746.

> that the claims court case had to be dismissed because of the pending case in the federal district court case.

App. 19 [emphasis added]. Furthermore, Ms. Williams explained that:

> [y]es, may be [the former attorney] had made some mistakes. But Robert and I do not believe he has... ever misrepresented anything to the Court and we know he has tried everything in his power to get this case going.

App. 22 [emphasis added].

The facts stated in Ms. Williams' November 13, 2007 Affidavit were adopted and incorporated by Mr. Williams in his affidavit, submitted in the same proceeding. App. 61.

In addition, plaintiffs' allegations in the July 2008 Declarations are in conflict with another affidavit previously submitted by Ms. Williams – this time in Stovall v. United States, 05-400C (Fed. Cl.). Although plaintiffs are not parties in Stovall, Ms. Williams submitted an affidavit also contradicting that their prior attorney never discussed the dismissal of their suit in this Court. Discussing conversations between her, her husband, and their former attorney, Ms. Williams stated:

> The federal Court Claims case was dismissed. Mr. Myart explained to us that the claims court case had to be dismissed because of the pending case in the federal district court case.

App. 26 ("November 9, 2007 Affidavit") [emphasis added].

## II. Procedural History

Six years ago, in August 2002, plaintiffs settled their claim against the United States Department of Agriculture ("USDA") arising from alleged discrimination in the processing of their loan application. App. 40. A year later, in 2003, the USDA denied plaintiffs' subsequent loan application. District Court Complaint ("DC Comp.") ¶ 28, App. 54. On November 3, 2003,

plaintiffs filed Williams I in the United States District Court for the District of Columbia. Williams v. Johanns, No. 03-2245 (D.D.C.) In Williams I, plaintiffs alleged violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, and the Fifth Amendment. Id. On July 5, 2005, the district court dismissed all of plaintiffs' claims except the ECOA claim. Id. (D.D.C. July 5, 2005). Currently, plaintiffs continue to litigate the ECOA claim in Williams I. Williams v. Johanns, No. 03-2245 (D.D.C. August 26, 2008) (scheduling order setting dispositive motion deadline).

Although the Williams I case was already pending, in February 2006, plaintiffs filed this suit, alleging, among other things, breach of contract by the USDA. Court of Federal Claims Complaint ("CFC Compl.") ¶¶ 35-40, App.37-38. We subsequently moved to dismiss for lack of subject matter jurisdiction, because, among other things, 28 U.S.C. § 1500 divested this Court of jurisdiction over the breach of contract claim, as it was already pursued in the district court as the ECOA claim in Williams I. Def. Supp. Br. (May 17, 2007). Plaintiffs never responded to our motion to dismiss. Instead, on August 22, 2007, plaintiffs voluntarily dismissed this case with prejudice. App. 1. As Ms. Williams stated in her November 9 and 13, 2007 Affidavits, "the claims court case had to be dismissed because of the pending case in the federal district court case." App. 19, 26. Indeed, plaintiffs' prior counsel conceded that "statutory and applicable case law prohibi[ted] this action." App. 1. Despite these statements, plaintiffs now seek to reinstate their previously-dismissed case pursuant to RCFC 60(b). Pl. Mot. ¶¶ 11, 12.

## ARGUMENT

I. Plaintiffs Knowingly And Voluntarily Dismissed Their Case And Are Now Judicially Estopped From Alleging Otherwise

A. Legal Standard

Judicial estoppel is a doctrine designed "to protect the integrity of the judicial process...by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (internal quotations and citations omitted). As the Supreme Court explained, "[b]ecause the rule is intended to prevent the improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by the court at its discretion." Id. at 750 (internal quotations and citations omitted). Moreover, "circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle." Id. Nevertheless, according to the Supreme Court, "several factors typically inform the decision whether to apply the doctrine in a particular case:

> First, a party's later position must be 'clearly inconsistent' with its earlier position...Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled...A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

Id. at 750-51 (internal citations omitted).

The Supreme Court cautioned, however, that the above legal precepts are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id. at 751. Indeed, "[a]dditional considerations may inform the doctrine's applications in specific

factual contexts." Id. The Federal Circuit has likewise described the application of judicial estoppel by stating:

> The doctrine of judicial estoppel is that where the party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed. Judicial estoppel is designed to prevent the perversion of the judicial process and, as such, is intended to protect the courts rather than the litigants. The decision whether to invoke judicial estoppel lies within the court's discretion.

Data General Corp. v. Johnson, 78 F.3d 1556, 1564 (Fed. Cir. 1996) (internal citations omitted).

B. Plaintiffs Are Estopped From Alleging That Their Lawsuit Was Dismissed Without Their Knowledge Or Permission

Plaintiffs should be estopped from presenting diametrically opposed facts to the courts. Judicial estopped is appropriate, where, as here, plaintiffs previously swore that this case was dismissed with their knowledge and authorization.

The November 2007 affidavits directly contradict plaintiffs' current statements. Ms. Williams submitted her November 9, 2007 Affidavit in Stovall (where Ms. Williams is not a party), in support of plaintiff's brief regarding defendant's "pattern and practice" of allegedly breaching settlement agreements. App. 24. Much of the affidavit focused on allegations of discrimination, but Ms. Williams also attached "important documents regarding [her and her husband's] cases in US District Court and the Federal Court of Claims," readily admitting that the "federal Court Claims case was dismissed [and that] Mr. Myart explained to us that the claims court case had to be dismissed because of the pending case in the federal district court case." App. 26.

Her second affidavit, sworn on November 13, 2007, was submitted in support of

plaintiffs' objections to Magistrate Judge Facciola's discovery orders in Williams I. App. 12. In that affidavit, Ms. Williams made several allegations that Judge Facciola was biased against her and her husband, as well as against their prior attorney, Mr. Myart. App. 13, 21, 22. Ms. Williams again explicitly admitted that Mr. Myart informed her and her husband of the dismissal of their case before this Court, as well as of the bases for so doing. App. 18. Moreover, in her November 13, 2007 affidavit, Ms. Williams explained that her Court of Federal Claims "case had to be dismissed as well because, according to Mr. Myart, the law provides that by statute." App. 18. She also stated that "Mr. Myart explained to us that the claims court case had to be dismissed because of the pending case in the federal district court case." App. 19. Mr. Williams adopted these statements as his own. App. 61. Accordingly, these three affidavits leave no doubt that both plaintiffs not only discussed the voluntary dismissal of this case with their attorney, but also understood the reasons for the dismissal.

Now, in support of their RCFC 60(b) motion, plaintiffs decided to rewrite the facts regarding the circumstances of their voluntary dismissal a year ago. Their July 2008 Declarations – claiming that they "never had any discussion with attorney James W. Myart, Jr. concerning the dismissal," that they "did not authorize" Mr. Myart to dismiss their case, and that they had no knowledge that the case had in fact been dismissed until late June 2008 – are completely at odds with plaintiffs' prior sworn statements. App. 7, 9, 18, 19, 22, 26, 61.

Plaintiffs' conflicting factual assertions undermine the judicial process. First, the November 2007 affidavits submitted by both plaintiffs to the district court and by Ms. Williams to the Court of Federal Claims are inconsistent with their July 2008 Declarations submitted to this Court. Second, although courts often examine whether a party has succeeded in persuading a

court to accept that party's earlier position, courts have explained that judicial estoppel also applies where the party presenting inconsistent positions obtained no benefit from the inconsistency. See, e.g., Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 361 (3d. Cir. 1996); Koopers Co., Inc. v. Certain Underwriters, 993 F.Supp. 358, 361 (W.D. Pa. 1998).

Here, the November 2007 affidavits may have played a role in granting procedural benefits to the plaintiffs in Williams I and Stovall. First, while Judge Kollar-Kotelly ultimately overruled objections to Magistrate Judge Facciola's discovery orders in Williams I, she recently set a generous timeline for the dispositive motion briefing schedule despite plaintiffs' failure to appear at the status hearing. See Williams v. Johanns, 03-2245 (D.D.C. August 26, 2008). It is possible that plaintiffs' November 13, 2007 affidavits, showing that plaintiffs understood and consented to the dismissal of their Court of Federal Claims suit, played some role as the district court weighed the equities of their case. Likewise, although Judge Allegra concluded that evidence of breaches of similar agreements would be inadmissible in Stovall, he ultimately granted plaintiff relief by allowing additional discovery. See Stovall v. United States, 05-400C (Fed. Cl. January 9, 2008). Moreover, as the Supreme Court cautioned, the general factors guiding the application of judicial estoppel, while instructive, ought not be inflexibly applied or supplant specific factual considerations and the overriding policy reasons behind the doctrine. New Hampshire, 532 U.S. at 751. Because the doctrine ultimately protects the courts and not litigants, it should be invoked in circumstances where plaintiffs submitted contradictory, sworn testimony in three separate proceedings in Federal court.

Finally, it would be unfair to allow plaintiffs to gain advantage in this case by permitting

them to completely contradict their prior sworn testimony. The unfairness here is two-fold. First, this case has been dismissed with prejudice for over a year now and reinstating it will impose unnecessary litigation burdens on the Government, especially where the case lacks merit, as the Court does not possess subject matter jurisdiction. Second, permitting plaintiffs to depart from prior, sworn testimony, creates the risk that plaintiffs may do so again, and therefore, imposes an unfair burden on the Government to guard against such risk. For example, if this case is reinstated and plaintiffs dismiss it again, what assures us that plaintiffs really mean it next time? Sworn testimony, such as the three affidavits submitted by plaintiffs in November 2007 to two Federal courts, ought to have been sufficient from the outset. Consequently, this Court should judicially estop plaintiffs from now taking an opposite position.

II. Plaintiffs Cannot Prevail Pursuant To Rule 60(b)

A. Legal Standard

Rule 60(b) provides, in pertinent part, that:

> the court may relieve a party...from a final judgment, order or proceeding, for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect...or (6) any other reason justifying relief from the operation of a judgment.

In this case, plaintiffs seek relief under Rule 60(b)(1) and (6).[2] Accordingly, when a party asserts "mistake, inadvertence surprise, or excusable neglect" pursuant to Rule 60(b)(1), it must first establish that:

---

[2] Plaintiffs' brief also states that their previous attorney, Mr. Myart, "committed a fraud upon this Court by intentionally representing that he had the authority to dismiss the plaintiffs' complaint." Pl. Mot. ¶9. However, relief under Rule 60(b)(3) for fraud is only applicable where it was caused by an adverse party. Latshaw v. Trainer Wortham & Co., Inc., 452 F.3d 1097, 1102 (9th Cir. 2006) ("Subsection (b)(3) permits relief only when the fraud was committed by 'an adverse party'.").

> (1) the movant must have a meritorious claim or defense; (2) the nonmovant must not be prejudiced by the granting of relief; and (3) the movant's dilemma was not caused by its own culpable conduct.

Stelco Holding Co. v. United States, 44 Fed. Cl. 703, 708-09 (Fed. Cl. 1999); see Information Sys. & Networks Corp. v. United States, 994 F.2d 792, 795 (Fed. Cir. 1993) ("The Claims Court utilized these factors and we adopt them as well."). Because the first factor "is a threshold inquiry rather than a factor entitled to substantial consideration in the court's determination of the equities," plaintiffs must, first and foremost, demonstrate that their underlying claim is meritorious. Stelco, 44 Fed. Cl. at 724. Otherwise, the remaining factors are irrelevant, and plaintiffs may not proceed further pursuant to RCFC 60(b)(1). Id.

### B. Plaintiffs Fail The Threshold Inquiry Governing RCFC 60(b)(1) Because Their Claim Is Not Meritorious

Plaintiffs' volunarily-dismissed lawsuit lacks merit, thus precluding relief under RCFC 60(b)(1). A meritorious claim is one that deserves "a legal victory" and has "legal worth." BLACK'S LAW DICTIONARY 827 (8th ed. 2005). Courts can identify such a claim by determining whether vacating an order or final judgment will be an "empty exercise" or "futile gesture." Curtis v. United States, 61 Fed. Cl. 511, 513 (Fed. Cl. 2004) (quoting Teamsters, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 20 (1st Cir. 1992)); Stelco, 44 Fed. Cl. at 724.

Here, for several reasons, the Court lacks subject matter jurisdiction to consider plaintiffs' particular breach of contract claim.[3] First, as we demonstrated in our supplemental brief, plaintiffs' initial pursuit of an identical claim in the district court bars this Court from exercising

[3] As noted earlier, this Court never had the opportunity to rule on our motion to dismiss for lack of subject matter jurisdiction. Plaintiffs filed their voluntary dismissal instead of submitting a response to our motion.

jurisdiction. Section 1500 of Title 28 of the United States Code provides that, to the extent that a plaintiff attempts to bring claims in this Court that "arise from the same operative facts" and that "seek the same relief" sought in another action, the United States Court of Federal Claims is divested of subject matter jurisdiction to hear those claims. Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1551 (Fed. Cir. 1994); Hall v. United States, 74 Fed. Cl. 391, 393-94 (Fed. Cl. 2006). "When the same relief is sought," claims are identical when they "arise from the same operative facts[,] even if the operative facts support different theories which cannot all be brought in one court." Harbuck v. United States, 378 F.3d 1324, 1328-29 (Fed. Cir. 2004) (citing Loveladies Harbor, 27 F.3d at 1549, 1551); Loveladies Harbor, 27 F.3d at 1550 (quoting Johns-Manville Corp. v. United States, 855 F.2d 1556, 1567 (Fed. Cir. 1988)).

Accordingly, plaintiffs' breach of contract claim cannot be brought in this Court because the same claim is already pending in the district court[4] in the Williams I case. Plaintiffs filed essentially the same complaint in both courts. In fact, the district court ECOA claim is predicated on the breach of contract claim arising from the settlement agreement. In addition, both complaints assert the same allegations of fraud and coercion regarding the settlement agreement. Compare CFC Compl. ¶¶ 32-34, App. 36-37, with DC Compl. ¶¶ 22-23, 36-41, App. 51-52, 57-58. Both complaints seek the same forms of relief: monetary damages, injunctive relief, and award for attorney fees. Compare CFC Compl., App. 38-39, with DC Compl., App. 58-59. And both complaints arise from the same operative facts, including seeking review of the handling and denial of the 2003 loan application. Compare CFC Compl. ¶¶ 29-30, App. 35-36, 39, with DC

---

[4] Plaintiff filed a complaint and an amended complaint for the ECOA claim in the district court on November 3, 2003, and March 22, 2005, respectively. This claim was thus pending before plaintiff filed a complaint in this Court on February 22, 2006.

Compl. ¶¶ 22-23, 28, 34, 39, App. 51-52, 54-57. Furthermore, until judgment has been entered, the contract claims remain pending in the district court pursuant to Fed. R. Civ. P. 54(b), despite the July 5, 2005 opinion that determined that those claims should be dismissed.

In addition, as we demonstrated in our motion to dismiss and in our reply brief, by the terms of the 2002 settlement agreement, plaintiffs' asserted contractual claim does not present a claim for presently due money damages. We also explained in our briefs that plaintiffs' claim is not ripe, which again defeats subject matter jurisdiction. For all these reasons, plaintiffs' claim lacks merit and fails the threshold requirement of RCFC 60(b)(1).

C. Plaintiffs Also Fail The Threshold RCFC 60(b)(1) Inquiry Because Their Dilemma Was Caused By Their Own Culpable Conduct

Plaintiffs' deliberate conduct also precludes their request for relief pursuant to RCFC60(b)(1). It is well-settled that deliberate or willful conduct automatically bars plaintiffs from seeking recourse under this provision. See Info. Sys. & Networks Corp., 994 F.2d at 796 ("The majority of circuits focus on the willfulness of the defaulting party and consider whether that party intended to violate court rules and procedures."); 12-60 MOORE'S FEDERAL PRACTICE - CIVIL § 60.41 ("In any context, deliberate or willful conduct on the part of the person seeking relief from the judgement precludes, by its very nature, a finding of 'mistake' or 'inadvertence' or 'surprise' or 'excusable neglect.' ").

A plaintiff, as a client, is "accountable for the acts and omissions of [his or her] legal counsel." Stelco, 44 Fed. Cl. at 715-16; see Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship, 507 U.S. 380, 396-97 (1993) (citing Link v. Wabash R. Co., 370 U.S. 626, 633 (1962)) ("In other contexts, we have held that clients must be held accountable for the acts and omissions of their

attorneys."). In fact, a plaintiff has "an affirmative duty to inquire about the status of his case." Bridgham by Libby v. Secretary of the Dep't of Health & Human Servs., 33 Fed. Cl. 101, 105 (Fed. Cl. 1995) (citing Pryor v. U.S. Postal Service, 769 F.2d 281, 287 (5tt Cir. Tex 1985)) (en banc)). Therefore, except in unique circumstances where "the evidence is clear that the attorney and his client were not acting as one," neither an attorney's gross negligence, ignorance of the rules, nor ignorance of the law is enough to warrant relief for a plaintiff pursuant to RCFC 60(b)(1). Primbs v. United States, 4 Cl. Ct. 366, 370 (Cl. Ct. 1984); see also JGB Enters. v. United States, 71 Fed. Cl. 468, 472 (Fed. Cl. 2006); Freeman v. Secretary of HHS, 35 Fed. Cl. 280 (Fed. Cl. 1996).

Furthermore, courts stringently implement this interpretation of RCFC 60(b)(1). The rule "was not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise." JGB Enters., 71 Fed. Cl. at 468 (quoting Federal's Inc. v. Edmonton Inv. Co., 555 F.2d 577, 583 (6th Cir. 1977)). This is the case even when "a client may be made to suffer the consequence of dismissal of its lawsuit":

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

Pioneer, 507 U.S. 380, 396-97 (citing Link, 370 U.S. at 633).

Here, plaintiffs are responsible for their current dilemma. Even assuming that plaintiffs' former attorney did, in fact, file the notice of voluntary dismissal without their authorization, knowledge, or approval and that, by doing so, the former attorney was negligent, the

aforementioned law mandates that plaintiffs are still accountable for the former attorney's actions and therefore not entitled to relief pursuant to RCFC 60(b)(1). The former attorney, Mr. Myart, made a deliberate and willful tactical decision on behalf of plaintiffs. Not only did he admit that "[t]he statutory and applicable case law prohibit this Court from entertaining the action pending before the Court," but he requested a dismissal with prejudice when the default is without prejudice. App. 1; see RCFC 41(a). Thus, regardless of the fact that plaintiffs are now unsatisfied with the outcome, they must bear the consequences of Mr. Myart's actions because they chose him as their attorney. If anything, the recourse available to plaintiffs is a malpractice suit, not relief pursuant to RCFC 60(b)(1).

Moreover, the November 2007 affidavits make clear that plaintiffs had knowledge of and approved of the voluntary dismissal. The glaring, unexplained inconsistency in the multiple, personally signed, affidavits plaintiffs have filed suggests that, through their counsel, they are "playing fast and loose with the courts" stating whatever seems convenient depending upon the "exigencies of the moment." New Hampshire, 532 U.S. at 750 (internal quotations and citations omitted). This Court should not provide plaintiffs relief pursuant to RCFC 60(b)(1) because there is compelling evidence that plaintiffs - both as clients and as individual actors - deliberately and willfully requested a voluntary dismissal.

D. RCFC 60(b)(6) Is Inapplicable As Plaintiffs Do Not Present "Any Other Reason Justifying Relief"

RCFC 60(b)(6) is a catch-all provision that allows the Court to grant relief in a variety of circumstances not provided by RCFC 60(b)(1)-(5). Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378, 1382 (Fed. Cir. 2002). The Supreme Court explained that the moving party's dilemma

necessitating relief pursuant to Rule 60(b)(6) must be an "'extraordinary circumstance' suggesting the party is faultless." Pioneer, 507 U.S. at 393. And the moving party's motion may not be "premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988).

Here, plaintiffs cannot seek relief pursuant to RCFC 60(b)(6) for several reasons. First, as we already demonstrated, plaintiffs are not faultless. Plaintiffs are held accountable for the actions of their former attorney, and, based on their testimony, plaintiffs knew that their attorney requested a voluntary dismissal. Additionally, plaintiffs' situation is not extraordinary or "going beyond what is usual, regular, or customary." Petitioning the court for a voluntary dismissal is a common practice in civil litigation - hence, its memorialization as a rule. See RCFC 41(a). Moreover, plaintiffs failed to explain any extraordinary circumstances in their motion. Pl. Mot. ¶ 12. Finally, plaintiffs cannot seek relief under both RCFC 60(b)(1) and 60(b)(6). Liljeberg, 486 U.S. at 863. Accordingly, plaintiffs' reliance on RCFC 60(b)(6) is misplaced and their motion should be denied.

**CONCLUSION**

For these reasons, we respectfully request that the Court deny Plaintiffs' motion for relief.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

*/s Kirk T. Manhardt*
KIRK T. MANHARDT
Assistant Director

*/s Patryk J. Drescher*
PATRYK J. DRESCHER
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tele: (202) 616-0464
Fax: (202) 307-0972

September 16, 2008

Attorneys for Defendant United States

CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2008, a copy of the foregoing Defendant's Response To Plaintiff's Motion For Relief From Order And Appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s Patryk J. Drescher*